259 P.3d 351 (2011)
STATE of Washington, Respondent,
v.
Anthony Dewayne JONES, Appellant.
No. 39573-8-II.
Court of Appeals of Washington, Division 2.
August 30, 2011.
*352 Kathryn A. Russell Selk, Russell Selk Law Office, Seattle, WA, for Appellant.
Kimberley Ann Demarco, Pierce County Prosecutor's Office, Tacoma, WA, for Respondent.
PENOYAR, C.J.
¶ 1 Anthony Dewayne Jones appeals his convictions of unlawful possession of cocaine with intent to deliver within 1,000 feet of a school bus stop route, unlawful possession of oxycodone, and unlawful possession of methadone. Jones argues that the arresting officer conducted an unlawful warrantless search of his vehicle. He also asserts that the prosecutor committed misconduct and that he received ineffective assistance of counsel. Finally, he raises several arguments in his statement of additional grounds (SAG)[1]. We affirm Jones's conviction of unlawful possession of cocaine with intent to deliver within 1,000 feet of a school bus stop route, but we reverse his convictions of unlawful possession of oxycodone and unlawful possession of methadone.

FACTS
¶ 2 On the afternoon of November 21, 2007, Tacoma Police Officer Kenneth Smith, who was on duty with Officer Henry Betts, noticed a man driving a Dodge Charger without a seat belt. Smith initiated a traffic stop.
¶ 3 The Dodge Charger's driver, Jones, pulled his vehicle into a 7-Eleven parking lot, parked the car, and opened the driver's side door. Smith informed Jones that he had been stopped for failing to wear his seat belt and requested Jones's driver's license, registration, and proof of insurance. Smith cited Jones with an infraction for failure to wear a seat belt.
¶ 4 When Smith first approached Jones's vehicle, he noticed a compartment in the driver's side door containing white pills and two unlabeled pill bottles. The pills had spilled out of one of the bottles, and Smith noted an imprint of the number 512 on one of the white pills. Smith recognized the pill as oxycodone.
¶ 5 Smith asked Jones who owned the pills, and Jones responded that they belonged to his wife. Smith asked Jones if the pill bottle was labeled, and Jones responded that it was not. Smith asked Jones what the pills were, and Jones told Smith that the pills were *353 Percocet.[2] Smith advised Jones he was under arrest, placed him in handcuffs, and read him his Miranda[3] warnings. Next, Smith asked Jones if he understood those rights, and, having those rights in mind, whether he wished to speak with the officers. Jones responded "yes" to both questions. Report of Proceedings (RP) at 116-17. Jones then told Smith that he did not know it was a crime to have Percocet.
¶ 6 Smith then searched Jones. As he reached into Jones's left front pant pocket, Jones said, "This is not good; I am f[* * *]ed." RP at 119. Concerned for his safety, Smith asked Jones what was in his pocket. Jones replied, "I got some stuff that I should not be having." RP at 120. Smith then opened Jones's pocket and observed a plastic baggie containing 19 individually packaged blue baggies. Each baggie contained a white chalky substance. Smith asked Jones if the substance, which he suspected to be crack cocaine, was fake and Jones replied, "No, that's some coke." RP at 122. At trial, Smith testified that, in his experience, the amount of cocaine, a total of 21 grams, and the packaging were consistent with an intent to sell the drugs. When Smith asked Jones what he intended to do with the drugs, Jones responded that he had intended to sell the pills and the crack cocaine.
¶ 7 After placing Jones in the back of his patrol car, Smith searched Jones's vehicle. Smith found two pill bottles, which contained pills, in the driver's side door console. The large pill bottle contained what appeared to be oxycodone and methadone pills. The smaller bottle contained what appeared to be methadone pills. Forensics later confirmed that the substances found in Jones's vehicle and on his person were cocaine, oxycodone, and methadone.
¶ 8 Jones asked to speak with another officer, who he apparently felt could help him get out of trouble. Smith contacted a special agent with the violent crimes task force. The special agent arrived at the scene and interviewed Jones.
¶ 9 On January 25, 2008, the State charged Jones with unlawful possession of cocaine with intent to deliver,[4] unlawful possession of oxycodone,[5] and unlawful possession of methadone.[6] On July 6, 2009, the State filed an amended information, adding a school zone enhancement[7] to Jones's unlawful possession of cocaine with intent to deliver charge.
¶ 10 Before trial, Jones moved to suppress evidence seized from his vehicle, arguing that he was unreasonably detained and that the traffic stop was pretext for an unrelated criminal investigation. He also moved to suppress his statements to the police, asserting that they were made in violation of his Fifth Amendment right to silence. The trial court denied his motions. At trial, Jones testified that he had purchased the pre-packaged cocaine. He denied telling Smith that he intended to sell the drugs. Betts testified that he was not involved in the conversation between Smith and Jones.
¶ 11 The jury found Jones guilty of all charges and found that he had possessed cocaine with intent to deliver within a school zone. Jones appeals.

ANALYSIS

Vehicle Search
¶ 12 Jones argues for the first time on appeal that Smith's warrantless search of his vehicle was unlawful under the state and federal constitutions.[8] The State argues that Jones failed to preserve this issue for appeal and that the evidence is admissible under the open view doctrine. We agree with Jones.

*354 A. Manifest Error
¶ 13 The State contends that the record "was insufficiently developed for this court to determine the extent of the search" and that Smith "found no evidence in defendant's car other than what was observed in open view. Without the admission of evidence acquired as the result of an illegal search, there is no prejudice and any error is not manifest." Resp't's Supplemental Br. at 5. In general, we do not consider an issue raised for the first time on appeal, unless it is a manifest error affecting a constitutional right. See RAP 2.5(a)(3); State v. Kirkman, 159 Wash.2d 918, 926, 155 P.3d 125 (2007). If the error is of constitutional magnitude, the defendant must show how the alleged error actually prejudiced him in the context of trial. State v. McFarland, 127 Wash.2d 322, 333, 899 P.2d 1251 (1995). "If the facts necessary to adjudicate the claimed error are not in the record on appeal, no actual prejudice is shown and the error is not manifest." McFarland, 127 Wash.2d at 333, 899 P.2d 1251.
¶ 14 The alleged error affects Jones's constitutional right to privacy under article I, section 7 of the Washington State Constitution. All the facts necessary to adjudicate the claimed error are in the record on appeal: Smith testified that he stopped Jones for failing to wear his seat belt, approached Jones's vehicle, saw white pills that he recognized to be oxycodone and two pill bottles in a compartment in the driver's side door, arrested Jones, placed Jones in the back of his patrol car, and then searched Jones's vehicle. Smith testified that he then located two pill bottles, containing oxycodone and methadone pills. Smith did not observe the methadone until he searched Jones's vehicle. Prejudice exists because the pills and pill bottles seized from Jones's vehicle provided evidence to support Jones's charges and convictions. We must consider Jones's claim.[9]

B. Open View Doctrine
¶ 15 When a party claims state and federal constitutional violations, we look first at the state constitution. State v. Patton, 167 Wash.2d 379, 385, 219 P.3d 651 (2009). "No person shall be disturbed in his private affairs, or his home invaded, without authority of law." Wash. Const. art. 1, § 7. Washington courts recognize a privacy interest in automobiles and the contents therein. Patton, 167 Wash.2d at 385, 219 P.3d 651. Under article I, section 7, "a warrantless search is per se unreasonable, unless it falls within one of the carefully drawn exceptions to the warrant requirement." Patton, 167 Wash.2d at 386, 219 P.3d 651.
¶ 16 The State argues that no search occurred because the pills were in open view. The State does not argue that any other exceptions to the warrant requirement, such as the vehicle search incident to arrest or exigent circumstances exception, apply. The State is correct that one exception to the warrant requirement is the open view doctrine. See State v. Gibson, 152 Wash.App. 945, 954, 219 P.3d 964 (2009). The open view doctrine applies when an officer observes a piece of evidence from a nonconstitutionally protected area. Gibson, 152 Wash.App. at 955, 219 P.3d 964.
[I]f an officer, after making a lawful stop, looks into a car from the outside and sees a weapon or contraband in the car, he has not searched the car. Because there has *355 been no search, article [I], section 7 is not implicated. Once there is an intrusion into the constitutionally protected area, article [I], section 7 is implicated and the intrusion must be justified if it is made without a warrant.
State v. Kennedy, 107 Wash.2d 1, 10, 726 P.2d 445 (1986).
¶ 17 The open view doctrine "does not[, however,] provide authority to enter constitutionally-protected areas to take the items without first obtaining a warrant." State v. Posenjak, 127 Wash.App. 41, 52-53, 111 P.3d 1206 (2005). In order to seize items in open view, the officer must have probable cause to believe the items were evidence of a crime and be faced with "`emergent or exigent circumstances regarding the security and acquisition of incriminating evidence'" such that it is impracticable to obtain a warrant. Gibson, 152 Wash.App. at 956, 219 P.3d 964 (quoting State v. Smith, 88 Wash.2d 127, 137-38, 559 P.2d 970 (1977)).
¶ 18 When Smith approached Jones's vehicle, he noticed a compartment in the driver's side door containing white pills and two pill bottles. Smith noted an imprint of the number 512 on one of the white pills and recognized the pill to be oxycodone. Under the open view doctrine, Smith's observation of the pills and pill bottles, from the nonconstitutionally protected area outside of Jones's vehicle, was not a search implicating article I, section 7; however, the open view doctrine did not permit his warrantless entry into Jones's vehicle to seize the items.
¶ 19 In Gibson, two officers stopped the defendant's car after he failed to signal a turn. 152 Wash.App. at 948-49, 219 P.3d 964. One of the officers learned that the defendant had an outstanding arrest warrant, arrested the defendant, handcuffed him, and placed him in the back of his patrol car. Gibson, 152 Wash.App. at 949, 219 P.3d 964. The arresting officer then walked around the defendant's locked vehicle and noticed a bottle of "Drano," a bottle of "Drain Out," and a bag of ammonia sulfate. Gibson, 152 Wash.App. at 949, 219 P.3d 964. He recognized these items as chemicals commonly used to manufacture methamphetamine, reached through the window of the defendant's vehicle, unlocked the door, and entered to secure the items. Gibson, 152 Wash.App. at 949, 219 P.3d 964. The officer knew that moving these items could pose health risks to the officers, and he entered the defendant's vehicle to verify that the items were secure. Gibson, 152 Wash.App. at 950, 219 P.3d 964. Inside the vehicle, the officer found ammonium sulfate, drain cleaner, dry ice, toluene, coffee filters, a funnel, coffee filters with pseudoephedrine, a bag of pseudoephedrine, and a coffee grinder containing pseudoephedrine. Gibson, 152 Wash.App. at 950, 219 P.3d 964. After determining that the items were secure, he left the items in the vehicle, and another officer obtained a warrant to search and seize the evidence of methamphetamine manufacturing. Gibson, 152 Wash.App. at 950, 219 P.3d 964. On appeal, the defendant challenged the initial warrantless search of his vehicle. Gibson, 152 Wash.App. at 953-54, 219 P.3d 964.
¶ 20 The situation here parallels that in Gibson where, ". . . to justify the warrantless seizure, the deputies must have had probable cause to believe that the contents of Gibson's vehicle were evidence of a crime and must have been faced with `emergent or exigent circumstances regarding the security and acquisition of incriminating evidence' that made it impracticable to obtain a warrant." Gibson, 152 Wash.App. at 956, 219 P.3d 964 (quoting Smith, 88 Wash.2d at 137-38, 559 P.2d 970). As in Gibson, "the determinative question is whether there were sufficient exigent circumstances to justify the seizure without a warrant." 152 Wash.App. at 957, 219 P.3d 964. Here, unlike in Gibson, no such circumstances existed. At the time of the search, Jones had been arrested, handcuffed, searched, and secured in the patrol car. Another officer was at the scene, and Jones's vehicle was parked in a parking lot. There was nothing to prevent the officers from safely securing the scene and obtaining a warrant. Thus the evidence seized from the car must be suppressed.[10]
*356 ¶ 21 A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder shall be filed for public record pursuant to RCW 2.06.040, it is so ordered.

I. Prosecutorial Misconduct
¶ 22 Jones next argues that the prosecutor committed misconduct by shifting the burden of proof and misstating the evidence during closing and rebuttal arguments. We disagree.
¶ 23 To show misconduct, the defendant must show that the prosecutor did not act in good faith and the prosecutor's conduct was both improper and prejudicial. State v. Manthie, 39 Wash.App. 815, 820, 696 P.2d 33 (1985). We review a prosecuting attorney's allegedly improper remarks in the context of the total argument, the issues in the case, the evidence addressed in the argument, and the instructions given to the jury. State v. Russell, 125 Wash.2d 24, 85-86, 882 P.2d 747 (1994). A prosecutor may not refer to evidence not presented at trial; however, in closing argument, a prosecutor has wide latitude to draw reasonable inferences from the evidence and to express such inferences to the jury. State v. Magers, 164 Wash.2d 174, 192, 189 P.3d 126 (2008). Prejudice occurs if "there is a substantial likelihood the instances of misconduct affected the jury's verdict." State v. Dhaliwal, 150 Wash.2d 559, 578, 79 P.3d 432 (2003) (quoting State v. Pirtle, 127 Wash.2d 628, 672, 904 P.2d 245 (1995)).
¶ 24 If defense counsel does not object, move for mistrial, or request a curative instruction, then a prosecutor's allegedly improper argument cannot be urged as error on appeal unless the comment was so flagrant and ill-intentioned that an instruction could not have cured the prejudice. State v. Dunaway, 109 Wash.2d 207, 221, 743 P.2d 1237 (1987), 749 P.2d 160 (1988). We presume jurors follow instructions. State v. Hopson, 113 Wash.2d 273, 287, 778 P.2d 1014 (1989).

A. Burden of Proof
¶ 25 Jones argues that the State committed misconduct by making three statements that allegedly "misstated the prosecutor's constitutional burden and improperly shifted the burden of proof to Jones." Appellant's Br. at 15. First, Jones argues that the State committed misconduct by stating:
He can always think of something else I should have done or should have given you. That isn't the same as saying the State didn't meet its burden. Key distinction there. Just because [Jones] can come up with some scenario in which I could have possibly given you more evidence, that is not the same as saying the defendant is not guilty beyond a reasonable doubt.

RP at 304 (emphasis added). Jones argues that this statement "improperly shifted the burden of proof." Appellant's Br. at 15. This misconstrues the State's argument. The State did not mean that it had to prove that Jones was "not guilty beyond a reasonable doubt" in order for the jury to find Jones not guilty of the charged crimes. Rather, the State argued that it was not required to provide evidence to explain every possible scenario in order to prove that Jones was guilty beyond a reasonable doubt. The State's comment was not improper.
¶ 26 Next, Jones asserts that the State made improper argument by stating:
Reasonable doubtand the instruction you got just is if you have an abiding belief. That's the instruction you have before you. I ask you to go back there as a reasonable person. If you goyou look at this evidence and you go, "Yeah, he did that, he possessed that with the intent to deliver," then you have that abiding belief.
*357 RP at 305-06. Jones argues that this statement "misstated and minimized the prosecutor's weighty constitutional burden, shifted a burden to Jones and turned the presumption of innocence on its head." Appellant's Br. at 17. But the trial court instructed the jury:
A reasonable doubt is one for which a reason exists and may arise from the evidence or lack of evidence. It is such a doubt as would exist in the mind of a reasonable person after fully, fairly, and carefully considering all of the evidence or lack of evidence. If, from such consideration, you have an abiding belief in the truth of the charge, you are satisfied beyond a reasonable doubt.
Clerk's Papers (CP) at 116; Inst. 2. While "you go, `Yeah he did that . . .'" may not be an elegant or accurate example of "an abiding belief," the accurate reasonable doubt instruction resolved any potential confusion the jury may have had. RP at 306.
¶ 27 Further, Jones contends that the State's following argument constituted misconduct:
The way I like to explain it is this, is that we've all seen the game show Wheel of Fortune. They pop up letters, people pop up letters, the words start spelling out in front of you, at some point there's enough letters up there where you can guess the word. You know what the word is.
What counsel's trying to say is, well, not every letter is lit up; not every letter is turned over. You don't know what the word is yet.
That's proof beyond all doubt. I don't need to turn over every single one of those letters. What I need to do is I need to keep turning them over until we all know what the word is. Right?
Counsel points to one piece of evidence or points to another and says that's not enough. I am not asking you to look at these pieces of evidence alone. What I am asking you to do is look at them all together. And when you start stacking them on top of one another, I've turned over enough letters for you to know what the word is. The word is guilty.
RP at 306. Jones asserts that this argument "trivialized the juror's decision. . . . As a result, the jurors were misled about the proper standard to apply, believing they only had to be as sure of guilt to convict as they were sure that they had properly guessed the word in a game show puzzle, even without all the letters." Appellant's Br. at 20.
¶ 28 In State v. Anderson, we held that a prosecutor's comments discussing the reasonable doubt standard in the context of everyday decision making were improper because "[b]y comparing the certainty required to convict with the certainty people often require when they make everyday decisionsboth important decisions and relatively minor ones the prosecutor trivialized and ultimately failed to convey the gravity of the State's burden and the jury's role in assessing its case against [the defendant]." 153 Wash.App. 417, 431, 220 P.3d 1273 (2009), review denied, 170 Wash.2d 1002, 245 P.3d 226 (2010). Similarly, in State v. Johnson, we held that discussing the reasonable doubt standard in the context of making an affirmative decision based on a partially completed puzzle trivialized the State's burden of proof. 158 Wash.App. 677, 685, 243 P.3d 936 (2010), review denied, 171 Wash.2d 1013, 249 P.3d 1029 (2011).
¶ 29 Here, the prosecutor's analogy was improper. The game show analogy is problematic in that there are instances where a game show contestant, and by analogy, a juror, is encouraged to guess the solution before he is certain beyond a reasonable doubt. Further, in light of Anderson and Johnson, discussing the reasonable doubt standard in the context of making an affirmative decision based on a game show, like analogizing the reasonable doubt standard to a partially completed puzzle, trivializes the State's burden.
¶ 30 Despite the impropriety of the prosecutor's comment, we do not reverse the possession of cocaine with intent to deliver conviction. Here, defense counsel did not object and Jones has failed to show that the State's comment was so flagrant or ill-intentioned that an instruction could not have cured the prejudice. In State v. Warren, the prosecutor repeatedly argued that the defendant was *358 not entitled to "the benefit of the doubt," defense counsel objected, and the trial court gave the jury a lengthy curative instruction and directed it to review the written instructions. 165 Wash.2d 17, 24-25, 28, 195 P.3d 940 (2008), cert. denied, ___ U.S. ___, 129 S.Ct. 2007, 173 L.Ed.2d 1102 (2009). Our Supreme Court held that the prosecutor's argument was improper but that the trial court's curative instruction cured any error. Warren, 165 Wash.2d at 26, 28, 195 P.3d 940. Unlike Warren, Jones did not object to the prosecutor's argument and did not ask for a curative instruction. While the prosecutor's argument was improper, it was not so flagrant and ill-intentioned that it could not have been cured by an instruction. Jones waived the error.
¶ 31 Furthermore, the trial court properly instructed the jury regarding the burden of proof, and we presume the jury follows the trial court's instructions. Finally, in this case, there is considerable evidence against Jones. Jones has failed to show that he was unfairly prejudiced by the prosecutor's comment. Smith searched Jones's person, opened Jones's pocket, and observed a plastic baggie containing 19 individually packaged blue baggies. The baggies contained a white chalky substance. Smith asked Jones if the substance, which he suspected to be crack cocaine, was fake, and Jones replied, "No, that's some coke." RP at 122. The cocaine was packaged in 19 plastic baggies, and weighed a total of 21 grams, which Smith testified was consistent with an intent to sell the drugs. Jones testified that he did not intend to sell the cocaine but had purchased the pre-packaged cocaine in bulk from a friend. The jury assessed the witnesses' credibility and determined that the State's witnesses were more credible than Jones. We defer to its credibility determination. State v. Thomas, 150 Wash.2d 821, 874-75, 83 P.3d 970 (2004).

B. Mischaracterization of the Evidence
¶ 32 Next, Jones contends that the prosecutor committed misconduct by arguing that Jones told both Smith and Betts that he intended to sell the pills and cocaine. Jones argues that this constituted misconduct because only Smith testified that he heard Jones make that comment; and, "[t]he potential impact of these misstatements cannot be overstated. The misstatements were . . . a crucial part of the [S]tate's case." Appellant's Br. at 26.
¶ 33 Specifically, Jones asserts that the prosecutor committed flagrant and ill-intentioned misconduct by arguing:
[Jones told] the cops, "I'm here to sell the drugs. I'm here to sell the pills and the crack. That's why I came to this 7-Eleven." That's what he tells the cops. Both the officers testified that that's what he heard. When he was interviewing him, the defendant said those words.
RP at 281-82. The prosecutor also argued during closing, "He said that when he talked to [the special agent], he told him things that weren't true. In his own admission he said, `Well, I might have implied that I deal, might have said that I dealt, but those aren't true'" and "[b]ased on all of that evidence, when you look at all those drugs, the packaging, what he said to the officers, how he testified here, I am going to ask you find the defendant guilty of possession with intent, cocaine." RP at 286, 288. Finally, during rebuttal, the State argued that Jones said he intended to sell the cocaine, "He tells you that very thing. He tells it to the officers." RP at 310.[11]
¶ 34 First, Jones testified at trial that he told the special agent[12] that he intended to deliver the substances. Smith testified that Jones told him he intended to deliver the *359 substances. Thus, the prosecutor did not misstate the evidence, as he was not referring to Betts and Smith. Rather, when the prosecutor referred to "the officers," he meant Smith and the special agent.[13] Additionally, the trial court instructed the jury that the attorneys' statements were not evidence and that they were only to rely on the evidence produced at trial during their deliberations. We presume juries follow instructions. Finally, defense counsel failed to object to the prosecutor's alleged misconduct. The State's argument was not so flagrant and ill-intentioned that an instruction could not have cured the prejudice. Jones's argument that the prosecutor committed misconduct by mischaracterizing the evidence fails.

II. Ineffective Assistance of Counsel
¶ 35 Next, Jones argues, in the alternative, that defense counsel was ineffective by failing to object to the prosecutor's alleged misstatements of the law and the evidence. Although one of the prosecutor's arguments, the puzzle analogy, was improper, it was not prejudicial. Accordingly, Jones's ineffective assistance of counsel argument fails.

III. Statement of Additional Grounds

A. Pretextual Stop
¶ 36 In his SAG, Jones argues that Smith's traffic stop was pretext for an unrelated criminal investigation. A pretextual, warrantless traffic stop violates article I, section 7 of the Washington State Constitution. State v. Ladson, 138 Wash.2d 343, 358, 979 P.2d 833 (1999). A stop is pretextual when an officer stops a vehicle to conduct an investigation unrelated to driving, not to enforce the traffic code. Ladson, 138 Wash.2d at 349, 979 P.2d 833. To determine whether a pretextual stop occurred, the court must consider the totality of the circumstances, including the officer's subjective intent and the objective reasonableness of the officer's conduct. Ladson, 138 Wash.2d at 358-59, 979 P.2d 833. "[P]atrol officers whose suspicions have been aroused may still enforce the traffic code, so long as enforcement of the traffic code is the actual reason for the stop." State v. Hoang, 101 Wash.App. 732, 742, 6 P.3d 602 (2000).
¶ 37 Jones argues that Smith initiated a traffic stop "solely to investigate for gang activity and fish for evidence of a crime." SAG at 17. The evidence presented at the suppression hearing, however, indicates that Smith initiated the stop, during daylight hours, because Jones was not wearing his seat belt. Smith did cite Jones for failing to wear a seat belt. Smith testified that he makes about 25 traffic stops per month for failure to wear a seat belt. The trial court found Smith's testimony credible. Jones fails to show that the stop was pretextual.

B. Seizure
¶ 38 Next, Jones argues that he was unlawfully seized because, "[o]nce pulled over, Mr. Jones was not free to leave or free to terminate the encounter with Officer Smith." SAG at 17. Whether a seizure occurred and whether that seizure was valid are separate inquiries. State v. O'Neill, 148 Wash.2d 564, 575-76, 62 P.3d 489 (2003). Drivers are seized when the police stop a vehicle. State v. Byrd, 110 Wash.App. 259, 264, 39 P.3d 1010 (2002). A police officer may, incident to stopping a car for a traffic violation, "take whatever steps necessary to control the scene, including ordering the driver to stay in the vehicle or exit it, as circumstances warrant. This is a de minimis intrusion upon the driver's privacy under article I, section 7." State v. Mendez, 137 Wash.2d 208, 220, 970 P.2d 722 (1999), abrogated on other grounds by Brendlin v. California, 551 U.S. 249, 127 S.Ct. 2400, 168 L.Ed.2d 132 (2007). Here, Smith saw oxycodone during his initial contact with Jones. Once Smith saw the oxycodone, he acquired lawful reasonable suspicion to further investigate Jones. This seizure was reasonable under the circumstances.

C. Miranda Warnings
¶ 39 Jones also contends that "Smith had a duty to advise Mr. Jones of his Miranda *360 rights under the Fifth Amendment before questioning him about the pills." SAG at 19. Generally, statements made while an accused is in custodial interrogation are not admissible unless the accused was first advised of his constitutional right to counsel and his privilege against self-incrimination. State v. Lavaris, 99 Wash.2d 851, 856-57, 664 P.2d 1234 (1983) (citing Miranda v. Arizona, 384 U.S. 436, 444, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966)). In determining whether an accused was in custody at the time of arrest, we consider whether a reasonable person in the individual's position would believe he or she was in police custody to a degree associated with formal arrest. State v. Lorenz, 152 Wash.2d 22, 36-37, 93 P.3d 133 (2004). Absent additional factors, the temporary seizure that follows a routine traffic stop does not constitute "custody" for purposes of Miranda. Berkemer v. McCarty, 468 U.S. 420, 440, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984). Here, we hold that Jones was not in custody when Smith asked him what the pills were, who the pills belonged to, and whether there was a label on the pill bottle. Jones made the statements, after being pulled over for failure to wear a seat belt, while seated in his vehicle and not handcuffed. Accordingly, the questioning was not custodial, and his statements during the initial encounter with Smith were properly admitted into evidence.

D. Knowledge Element
¶ 40 Jones also asserts that he "did not know that `[P]ercocets' were illegal." SAG at 20. But "ignorance of the law is no excuse." State v. Reed, 84 Wash.App. 379, 384, 928 P.2d 469 (1997). Further, "a good faith belief that a certain activity does not violate the law is . . . not a defense in a criminal prosecution." Reed, 84 Wash.App. at 384, 928 P.2d 469. Jones's argument fails.

E. Motion to Dismiss and Motion to Suppress
¶ 41 Next, Jones argues that the trial court erred in denying his motion to dismiss and motions to suppress. Before trial, Jones brought a Knapstad[14] motion, seeking to dismiss his unlawful possession of a controlled substance with intent to deliver charge. In order to prevail on a Knapstad motion, the defendant must show that "there are no material disputed facts and the undisputed facts do not establish a prima facie case of guilt." Knapstad, 107 Wash.2d at 356, 729 P.2d 48. CrR 8.3(c) delineates the procedure to be followed for Knapstad motions. "A decision denying a motion to dismiss under [CrR 8.3(c)] is not subject to appeal under RAP 2.2." CrR 8.3(c)(3). Rather, the defendant may only challenge the sufficiency of the evidence produced at trial. State v. Richards, 109 Wash.App. 648, 653, 36 P.3d 1119 (2001). Jones makes no argument in his SAG regarding the sufficiency of the evidence produced at trial; he merely states that the "trial court erred in denying Mr. Jones'[s] motion to dismiss." SAG at 20. Accordingly, his challenge of the trial court's denial of his Knapstad motion fails.[15]
¶ 42 Jones also brought motions to suppress all statements made in violation of his Fifth Amendment right to silence, all evidence obtained as a result of his allegedly unlawful seizure, and evidence obtained as a result of his allegedly pretextual traffic stop. "Miranda warnings protect a defendant from making incriminating statements to police while in the coercive environment of police custody." State v. Hickman, 157 Wash.App. 767, 772, 238 P.3d 1240 (2010). A confession is voluntary, and therefore admissible, if made after the defendant has been advised concerning rights and the defendant then knowingly, voluntarily, and intelligently waives those rights. State v. Aten, 130 Wash.2d 640, 663, 927 P.2d 210 (1996). Jones's statements, made after he had been arrested and given his Miranda warnings, were voluntary. Smith asked Jones if he *361 understood those rights, and, having those rights in mind, whether he wished to speak with the officers. Jones responded "yes" to both questions. RP at 24, 117. Jones knowingly, voluntarily, and intelligently waived his rights. The trial court did not err by denying his motion to suppress his custodial statements. Jones raised the remaining issues earlier in his SAG, and, for the reasons we discussed above, the trial court did not err in denying Jones's motions to suppress.

F. Opinion Testimony
¶ 43 Jones also argues that Smith's, Betts's, and Maude Kelleher's testimony violated his constitutional rights. He appears to argue that these witnesses testified as to their opinion of his guilt. The officers did not offer an opinion as to Jones's guilt; they merely testified regarding their observations during the incident.
¶ 44 Kelleher, the lead transportation router for the Tacoma School District, also did not offer an opinion on Jones's guilt. She testified that she had been asked to locate school bus stops and schools located in the area of the alleged incident. She prepared a map indicating that the incident occurred within 1,000 feet of a school bus stop, a fact the State had to prove for the special verdict.

G. Right to Counsel
¶ 45 Further, Jones asserts that he was denied his right to counsel when the trial court denied his request to replace defense counsel.[16] We disagree.
¶ 46 Defendants have the right to retain counsel of choice and the denial of a motion for continuance may unlawfully deprive the defendant of that right. State v. Chase, 59 Wash.App. 501, 506, 799 P.2d 272 (1990). But the assertion of the right to retain counsel must be made within a reasonable time before trial. Chase, 59 Wash.App. at 506, 799 P.2d 272. "In the absence of substantial reasons a late request should generally be denied, especially if the granting of such a request may result in delay of the trial." Chase, 59 Wash.App. at 506, 799 P.2d 272 (quoting State v. Garcia, 92 Wash.2d 647, 656, 600 P.2d 1010 (1979)). The trial court must balance the defendant's interest in counsel of his choice with the public's interest in efficient administration of justice. State v. Roth, 75 Wash.App. 808, 824, 881 P.2d 268 (1994). To make its determination the trial court should consider whether (1) it has granted previous continuances, (2) the defendant has legitimate cause for dissatisfaction with counsel, (3) available counsel is prepared for trial, and (4) denial of the motion is likely to prejudice the defendant's case. Roth, 75 Wash.App. at 825, 881 P.2d 268. We review this determination for abuse of discretion. Roth, 75 Wash.App. at 826, 881 P.2d 268.
¶ 47 Here, the trial court concluded:
[T]his case was continued from March 9 to May 7th because Mr. Jones was planning on retaining another attorney, and actually was continued because he previously had said he was going to hire another attorney, didn't do that. Then Mr. Huff needed additional time to prepare.
It's too late in the process to now ask for a continuance to hire an attorney on a case that was filed in January of 2008. And we have already called the case for trial, and we will proceed with the witness on the 3.5 and 3.6 issues.
RP at 10. After the CrR 3.5 and 3.6 hearings, Jones addressed the court and again sought to replace his attorney. Jones asserted that he would like to retain an attorney "with a little more time." RP at 98. Jones also indicated he wanted to call a witness, but his attorney had told him that the witness "has to know something precise." RP at 98. Again, the trial court denied Jones's request.
¶ 48 Here, the trial had already been continued once. Jones requested to replace his counsel on the first day of trial. There was no mention that the attorney Jones sought to retain was prepared for trial, and Jones presents *362 no argument as to how denial of the motion prejudiced his case. Accordingly, we hold that the trial court did not violate Jones's right to counsel.

H. Compulsory Process
¶ 49 Jones next asserts that the trial court violated his Sixth Amendment right to compulsory process when he was denied his request to call a 7-Eleven clerk, who allegedly witnessed the incident. The record indicates that defense counsel made a tactical decision not to call the witness. Further, the record does not show that Jones requested a subpoena for the witness, nor does it show that the trial court denied such a request. Thus, Jones does not demonstrate a violation of his right to compulsory process. See State v. Lewis, 156 Wash.App. 230, 244, 233 P.3d 891 (2010).

I. Jury Instruction
¶ 50 Jones next contends that instruction 9, the "to convict" instruction on possession with intent to deliver a controlled substance, failed to list all of the elements of the crime and is thus constitutionally defective. Specifically, he contends that the "to convict" instruction lacked an instruction that Jones "knowingly, feloniously, and unlawfully" possessed the drugs with intent to deliver, as charged in the information. SAG at 25.
¶ 51 An instruction purporting to list all of the elements of a crime must in fact do so. State v. Emmanuel, 42 Wash.2d 799, 819, 259 P.2d 845 (1953). "It cannot be said that a defendant has had a fair trial if the jury must guess at the meaning of an essential element of a crime or if the jury might assume that an essential element need not be proved." State v. Smith, 131 Wash.2d 258, 263, 930 P.2d 917 (1997).
¶ 52 Here, the "to-convict" instruction properly listed all of the elements of the crime. Instruction 9 states:
To convict the defendant of the crime of possession with intent to deliver a controlled substance, each of the following elements of the crime must be proved beyond a reasonable doubt:
(1) That on or about the 21 st day of November, 2007, the defendant possessed a controlled substance: cocaine;
(2) That the defendant possessed the substance with the intent to deliver a controlled substance; and
(3) That the acts occurred in the State of Washington.
CP at 123. "The phrase `unlawfully and feloniously' is equivalent to the term `knowingly.'" State v. Snapp, 119 Wash.App. 614, 621, 82 P.3d 252 (2004) (citing State v. Krajeski, 104 Wash.App. 377, 386, 16 P.3d 69 (2001)).
It is impossible for a person to intend to manufacture or deliver a controlled substance without knowing what he or she is doing. By intending to manufacture or deliver a controlled substance, one necessarily knows what controlled substance one possesses as one who acts intentionally acts knowingly. . . . Therefore, there is no need for an additional mental element of guilty knowledge.
State v. Sims, 119 Wash.2d 138, 142, 829 P.2d 1075 (1992). Accordingly, the instruction was not deficient for failing to state that Jones "knowingly, unlawfully, and feloniously" possessed the substance with intent to deliver a controlled substance.

J. Ineffective Assistance of Counsel
¶ 53 Jones further argues that "had trial counsel investigated the case, interview[ed] witnesses prior to trial, and tested the State's case to the crucible of truth, there is a reasonable probability that the trial court would have granted counsel's motion to dismiss and suppress, and the outcome of the proceedings would have been different." SAG at 26. Defense counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In re Pers. Restraint of Davis, 152 Wash.2d 647, 721, 101 P.3d 1 (2004) (quoting Strickland v. Washington, 466 U.S. 668, 691, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)). Jones's claim rests on matters outside the record. See McFarland, 127 Wash.2d at 335, 899 P.2d 1251. Accordingly, we do not consider this issue.

*363 K. Amended Information
¶ 54 Jones also argues that the State violated his due process rights when it amended the information on the first day of trial by adding a school zone enhancement. Under CrR 2.1(d), "[t]he court may permit any information. . . to be amended at any time before verdict or finding if substantial rights of the defendant are not prejudiced." The defendant bears the burden of showing prejudice. State v. Guttierrez, 92 Wash.App. 343, 346, 961 P.2d 974 (1998). When the State filed the amended information, the prosecutor stated, "[A]s I informed counsel awhile back, we are changing Count I. It adds a school zone enhancement." RP at 3. Defense counsel did not object and cross-examined Kelleher, the lead transportation router for the Tacoma School District. Jones fails to show the unfair prejudice that he alleges.

L. Plain View Doctrine
¶ 55 Finally, because we hold that the open view doctrine did not permit Smith's warrantless entry into Jones's vehicle to seize the pills and pill bottles, we need not address Jones's argument regarding the plain view doctrine.
¶ 56 We affirm Jones's conviction of unlawful possession of cocaine with intent to deliver within 1,000 feet of a school bus stop route, and we reverse Jones's convictions of unlawful possession of oxycodone and unlawful possession of methadone.
I concur: JOHANSON, J.
QUINN-BRINTNALL, J. (dissenting).
¶ 57 Because Anthony Dewayne Jones has failed to preserve his challenge to the admissibility of physical evidence at trial, I respectfully dissent.
¶ 58 Generally, failure to move to suppress evidence constitutes a waiver of the right to exclude it as obtained in violation of the Fourth Amendment. State v. Mierz, 127 Wash.2d 460, 468, 901 P.2d 286 (1995); State v. Tarica, 59 Wash.App. 368, 372, 798 P.2d 296 (1990), rev'd on other grounds by State v. McFarland, 127 Wash.2d 322, 899 P.2d 1251 (1995). A trial court does not err in considering evidence that a defendant has not moved to suppress. Mierz, 127 Wash.2d at 468, 901 P.2d 286. RAP 2.5(a)(3) permits a defendant to raise a "manifest error affecting a constitutional right" for the first time on appeal. "The defendant must identify a constitutional error and show how, in the context of the trial, the alleged error actually affected the defendant's rights; it is this showing of actual prejudice that makes the error `manifest', allowing appellate review." McFarland, 127 Wash.2d at 333, 899 P.2d 1251 (citing State v. Scott, 110 Wash.2d 682, 688, 757 P.2d 492 (1988)). To demonstrate actual prejudice, Jones must plausibly show that the asserted error had practical and identifiable consequences in the trial of the case. State v. O'Hara, 167 Wash.2d 91, 108, 217 P.3d 756 (2009) (citing State v. Kirkman, 159 Wash.2d 918, 935, 155 P.3d 125 (2007)).
¶ 59 Although the issue of lawful search and seizure of physical evidence is constitutional in nature, review of Jones's challenge to the admissibility of the evidence is preserved for our review only if Jones made a timely objection or motion to strike or suppress the allegedly unlawfully seized evidence at trial. ER 103(a)(1); State v. Harris, 154 Wash.App. 87, 94, 224 P.3d 830 (2010). Jones's motion must have stated a specific ground of objection. ER 103(a)(1). "Even if an objection is made at trial, [Jones] may only assign error in the appellate court on the specific ground of the evidentiary objection made at trial." DeHaven v. Gant, 42 Wash.App. 666, 669, 713 P.2d 149 (citing State v. Guloy, 104 Wash.2d 412, 422, 705 P.2d 1182 (1985), cert. denied, 475 U.S. 1020, 106 S.Ct. 1208, 89 L.Ed.2d 321 (1986); State v. Boast, 87 Wash.2d 447, 451, 553 P.2d 1322 (1976)), review denied, 105 Wash.2d 1015 (1986). We do not generalize specific objections such that the existence of a pretrial motion to suppress evidence seized preserves any claim of error with respect to that evidence. DeHaven, 42 Wash.App. at 670, 713 P.2d 149. And where the trial court has not been asked to rule on an issue, there is no ruling and thus no error appearing on the record affecting a constitutional right allowing us to address an untimely challenge to *364 the admissibility of the unchallenged evidence. RAP 2.5(a)(3).
¶ 60 Here, Jones moved to suppress all statements made in alleged violation of his Fifth Amendment right to silence and all evidence obtained either as a result of his allegedly unlawful seizure or the allegedly pretextual traffic stop. He did not challenge the scope of the search incident to his arrest. See State v. Louthan, 158 Wash.App. 732, 745, 242 P.3d 954 (2010). Because Jones failed to challenge the scope of the search of his vehicle, the State did not present alternative theories that may have justified the search and the trial court did not create a record sufficient for this court's review. RAP 2.5(a)(3); Louthan, 158 Wash.App. at 745, 242 P.3d 954.
¶ 61 On appeal, however, Jones argues for the first time that the warrantless search of his vehicle and subsequent seizure of evidence were unlawful under the Washington and federal constitutions. Specifically, Jones challenges the seizures as unlawful because they failed to fall under either the open view or plain view exceptions to the exclusionary rule. But Jones did not move to suppress evidence seized in alleged violation of either article I, section 7 of the Washington constitution or the Fourth Amendment and he may not argue any claim on this ground on appeal. RAP 2.5(a); DeHaven, 42 Wash.App. at 670, 713 P.2d 149.
¶ 62 Moreover, Jones's claim on appeal fails under our Supreme Court's recently articulated test for when a defendant may challenge for the first time the admissibility of evidence obtained during a warrantless search of an automobile incident his arrest. State v. Robinson, 171 Wash.2d 292, 305, 253 P.3d 84 (2011). In Robinson, our Supreme Court held that the principles of issue preservation would not apply if the following four conditions are met: "(1) a court issues a new controlling constitutional interpretation material to the defendant's case, (2) that interpretation overrules an existing controlling interpretation, (3) the new interpretation applies retroactively to the defendant, and (4) the defendant's trial was completed prior to a new interpretation." 171 Wash.2d at 305, 253 P.3d 84. No Washington court has recently issued a "new controlling constitutional interpretation" of either the open view or plain view exceptions to the exclusionary rule and Jones cannot satisfy the first factor of the Robinson test. 171 Wash.2d at 305, 253 P.3d 84; see also, Davis v. United States, ___ U.S. ___, 131 S.Ct. 2419, 2434, 180 L.Ed.2d 285 (2011) (courts do not apply the exclusionary rule to evidence properly seized under the law at the time the search is conducted).
¶ 63 Accordingly, because Jones failed to challenge the admissibility of the evidence resulting from Officer Kenneth Smith's warrantless seizure on either Fourth Amendment or article I, section 7 grounds at trial and, because neither the open view doctrine nor plain view doctrine were recently the subject of "a new controlling constitutional interpretation," I would hold that Jones has failed to preserve this issue for appellate review and affirm. RAP 2.5(a); Robinson, 171 Wash.2d at 305, 253 P.3d 84; Mierz, 127 Wash.2d at 468, 901 P.2d 286.
¶ 64 Alternatively, when Officer Smith approached Jones's vehicle, he saw what he immediately recognized as evidence of the crime of unlawful possession of a controlled substance then being conducted in his presence: oxycodone pills spilling out of an unlabeled pill bottle in the car door. The record does not support Jones's belated claim that the seizure of the contraband violated his state or federal constitutional rights and I would affirm.
NOTES
[1] RAP 10.10.
[2] Percocet contains oxycodone and acetaminophen. Physician's Desk Reference 1125 (62nd ed. 2008).
[3] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
[4] RCW 69.50.401(1), (2)(a).
[5] RCW 69.50.4013(1).
[6] RCW 69.50.4013(1).
[7] RCW 9.94A.533(6); RCW 69.50.435.
[8] At trial, Jones did not contest the search of his vehicle. Jones did argue that he was illegally seized and arrested and that the traffic stop was a pretext for an unrelated criminal investigation.
[9] We note that the Supreme Court recently reviewed the validity of a search incident to arrest, under RAP 2.5(a)(3), even though the defendant failed to move to suppress evidence obtained during the search. State v. Kirwin, 165 Wash.2d 818, 823-24, 203 P.3d 1044 (2009). But see State v. Mierz, 127 Wash.2d 460, 468, 901 P.2d 286 (1995) (holding that the defendant's failure to move to suppress evidence obtained during an allegedly unlawful search constituted a waiver of any error associated with the admission of the evidence).

We also note that we recently held in State v. Lee, 162 Wash.App. 852, ___, 259 P.3d 294 (2011), that the defendant's failure to move to suppress evidence seized from his vehicle constituted a waiver of the right to have it excluded. In Lee, the defendant did not move to suppress any of the physical evidence against him. Slip op. at 2. Jones, however, did move to suppress the evidence seized from his vehicle, arguing that he had been illegally seized and arrested and that the traffic stop was a pretext for an unrelated criminal investigation. Even though Jones moved to suppress the evidence on different grounds, his motions to suppress enabled him to sufficiently develop the record at his CrR 3.6 hearing. Thus, we may consider his claim.
[10] See State v. Swetz, 160 Wash.App. 122, 134, 247 P.3d 802 (2011) (noting that the observation of an item in open view from a lawful vantage point is not a search, but the officer's right to seize the items, if they are in a constitutionally protected area, must be justified by a warrant or an exception to the warrant requirement), petition for review filed, No. 85717-2 (Wash. Mar. 11, 2011). But see State v. Louthan, 158 Wash.App. 732, 746, 242 P.3d 954 (2010) (noting that there was no illegal search or seizure when police searched Louthan's vehicle without a warrant and seized a bong in open view) petition for review filed, No. 85608-7 (Wash. Feb. 8, 2011); State v. Barnes, 158 Wash.App. 602, 613-14, 243 P.3d 165 (2010) (holding that the trial court erred in ordering suppression of relevant evidence of the crime of arrest that the defendant had in open view).
[11] Jones also contends that the prosecutor committed misconduct on page 284 of the Report of Proceedings. The prosecutor only references one officer on page 283 and does not refer to any officers on page 284. Thus, it is unclear what statement Jones alleges is improper.
[12] During direct examination, defense counsel asked Jones, "[H]ow did it get to be that the officers say you were selling those pills and the crack and that you were meeting someone at the 7-Eleven? Did you not say that, or did you say that?" RP at 247. Jones responded, "I probably did say it to build any credibility up and I would have probably said it to [the special agent] but never to the officers." RP at 247.
[13] During closing, the State specifically referenced Jones's testimony, arguing, "He said that when he talked to [the special agent], he told him things that weren't true . . . [t]rying to bolster his credibility." RP at 286.
[14] State v. Knapstad, 107 Wash.2d 346, 729 P.2d 48 (1986).
[15] Further, viewed in the light most favorable to the State, a rational fact finder could find the essential elements of possession of cocaine with intent to deliver beyond a reasonable doubt. See State v. Salinas, 119 Wash.2d 192, 201, 829 P.2d 1068 (1992). Smith found 19 baggies of cocaine on Jones's person. At trial, Smith testified that, in his experience, the amount of cocaine, a total of 21 grams, and the packaging were consistent with an intent to sell the drugs.
[16] Jones argues that the denial of his request for a continuance to retain counsel of his choice "amounted to a denial of his right to the effective assistance of counsel under the Sixth and Fourteenth Amendments to the United States Constitution and Const. Art. I, Sec. 22." SAG at 23. However, it appears that he is arguing that the trial court violated his right to counsel by denying his motion to replace counsel.