219 P.3d 964 (2009)
STATE of Washington, Respondent,
v.
David GIBSON, Appellant.
No. 37663-6-II.
Court of Appeals of Washington, Division 2.
November 9, 2009.
*966 Eric J. Nielsen, Nielsen Broman & Koch PLLC, Seattle, WA, for Appellant.
Stephen D. Trinen, Pierce County Prosecutors Ofc, Tacoma, WA, for Respondent.

PART PUBLISHED OPINION
BRIDGEWATER, P.J.
¶ 1 David Gibson appeals his conviction for one count of unlawful manufacture of a controlled substance. He contends that the trial court erred in denying his CrR 3.6 motion to suppress evidence. We disagree. Contrary to Gibson's argument, the initial traffic stop of his vehicle was not pretextual. Gibson also urges this court to find the search unreasonable under Arizona v. Gant, ___ U.S. ___, 129 S.Ct. 1710, 173 L.Ed.2d 485 (2009). But Gant does not compel reversal of Gibson's conviction, even though the deputy searched incident to arrest, because the search was reasonable under the "open view" exception and exigent circumstances. We can uphold the trial court on any valid basis. Finally, Gibson contends, without merit, that he was prejudiced when the trial court untimely filed written findings of facts and conclusions of law. We affirm.

FACTS
¶ 2 On February 22, 2007, several Pierce County Sheriff Department deputies visited a residence located in Pierce County, Washington, near the Pierce-King County line, in an attempt to serve an arrest warrant on an individual not involved in this action. The deputies were unsuccessful in locating the named individual and began to leave the property.
¶ 3 Deputy Jeff England was the first to leave. As he neared the end of the driveway, Deputy England saw a vehicle, about 100 feet away, turn from State Route 165 into a driveway without signaling the turn. Deputy England stopped the vehicle, learned that Gibson was the driver, obtained Gibson's driver's license, and ran a check for warrants. He learned that Gibson had an outstanding Auburn[1] arrest warrant for third degree theft.[2]
¶ 4 After confirming the arrest warrant, Deputy Robert Tjossem arrested Gibson, handcuffed him, and placed him in the back of a patrol vehicle.
¶ 5 Deputy Tjossem proceeded to walk around Gibson's locked vehicle,[3] looked through the windows,[4] and immediately saw[5] a few items inside that caught his attention: a bottle of "Drano," a bottle of "Drain Out," and a bag of ammonia sulfate. Clerk's Papers (CP) at 70; VRP (Apr. 3, 2008) at 38-40; II VRP (Jan. 18, 2008) at 24; Ex. 8. Deputy Tjossem had extensive experience in identifying *967 various narcotic-related crimes, particularly methamphetamine manufacturing. Based on his training and experience, Deputy Tjossem recognized that the drain cleaners and ammonium sulfate were chemicals commonly used to manufacture methamphetamine. Deputy Tjossem then pushed open the wing window of Gibson's vehicle, reached in to unlock the door, and entered to secure the items used to manufacture methamphetamine.
¶ 6 Inside Gibson's vehicle, Deputy Tjossem found a 20-pound bag of ammonium sulfate, drain cleaner, dry ice, toluene, coffee filters, a funnel, used coffee filters with white powder, a small bag of white powder, and a coffee grinder that had white residue on the inside. The white residue was later found to be pseudoephedrine. Deputy Tjossem also found a receipt for a 20-pound bag of ammonium sulphate when he searched Gibson's person.
¶ 7 Deputy Tjossem had entered Gibson's vehicle to ensure that the items were secure, as he knew that moving items used to manufacture methamphetamines without proper safety equipment could pose health risks to him and other officers. Once he determined they were secure, he left the items in place, until Deputy Fry obtained a warrant to search and seize the evidence of methamphetamine manufacturing.
¶ 8 Deputy England cited Gibson for failing to signal turn (RCW 46.61.305), no splash apron/fenders (RCW 46.37.500), and unsafe tire tread (RCW 46.37.425). He put the citation in Gibson's pocket. Gibson was transported to Pierce County jail.
¶ 9 On February 23, 2007, Pierce County charged Gibson with one count of unlawful manufacture of a controlled substance. Gibson filed a motion to suppress the evidence under CrR 3.6, claiming that the evidence was unlawfully obtained. During the CrR 3.6 hearing, Gibson argued that the evidence was illegally seized because the initial stop was pretextual, the arrest was invalid, and, due to the invalid arrest, the search incident to arrest was unlawful. The trial court rejected Gibson's arguments and denied his motion for suppression. It entered findings of fact and conclusions of law as to the CrR 3.6 ruling on March 28, 2008.
¶ 10 Gibson waived his right to a jury and proceeded to a bench trial. The trial court found Gibson guilty as charged. Gibson appeals.

ANALYSIS

I. Pretextual Traffic Stop
¶ 11 To review a trial court's ruling on a suppression motion, we examine whether substantial evidence supports the challenged findings and whether those findings support the trial court's conclusions of law. State v. Ross, 106 Wash.App. 876, 880, 26 P.3d 298 (2001), review denied, 145 Wash.2d 1016, 41 P.3d 483 (2002). Substantial evidence is "`evidence in sufficient quantum to persuade a fair-minded person of the truth of the declared premises.'" State v. Jeannotte, 133 Wash.2d 847, 856, 947 P.2d 1192 (1997) (quoting Olmstead v. Dep't of Health, 61 Wash.App. 888, 893, 812 P.2d 527 (1991) (quoting Green Thumb, Inc. v. Tiegs, 45 Wash.App. 672, 676, 726 P.2d 1024)). We do not review credibility determinations on appeal, leaving them to the fact finder. State v. Frazier, 82 Wash.App. 576, 589 n. 13, 918 P.2d 964 (1996) (citing Fisher Props., Inc. v. Arden-Mayfair, Inc., 115 Wash.2d 364, 369, 798 P.2d 799 (1990)). And we treat unchallenged findings as verities on appeal. Ross, 106 Wash.App. at 880, 26 P.3d 298.
¶ 12 Pretextual traffic stops are warrantless seizures that violate article I, section 7 of the Washington State Constitution. State v. Ladson, 138 Wash.2d 343, 358, 979 P.2d 833 (1999). A pretextual traffic stop occurs when an officer does not stop a citizen to enforce the traffic code but rather to investigate suspicions unrelated to driving.[6]Ladson, 138 Wash.2d at 351, 979 P.2d 833. When the officer stops to actually enforce the traffic code, however, the stop is not pretextual even if the officer also suspects other criminal activity. State v. Hoang, 101 Wash.App. 732, 742, 6 P.3d 602 *968 (2000), review denied, 142 Wash.2d 1027, 21 P.3d 1149 (2001). In determining whether a traffic stop is pretextual, we consider the totality of the circumstances of the stop, including the officer's subjective intent and the objective reasonableness of the officer's behavior. Ladson, 138 Wash.2d at 358-59, 979 P.2d 833.
¶ 13 Gibson relies on Ladson, State v. DeSantiago, 97 Wash.App. 446, 983 P.2d 1173 (1999), and State v. Myers, 117 Wash.App. 93, 69 P.3d 367 (2003), review denied, 150 Wash.2d 1027, 82 P.3d 242 (2004), to support his pretext argument. These cases are factually distinguishable.
¶ 14 In Ladson, the officers admitted that they relied on a vehicle's expired license tabs as pretext to stop a vehicle and investigate suspected drug activity. The officers were part of a "proactive gang patrol" that stopped citizens for traffic code violations, not to enforce the traffic code. Ladson, 138 Wash.2d at 346, 979 P.2d 833.
¶ 15 In DeSantiago, while an officer was monitoring an apartment building for suspected drug activity, he saw the defendant quickly enter and exit the building and drive away. The officer, looking for a reason to stop defendant's vehicle, followed it for several blocks, eventually stopping the vehicle for an illegal left turn. The appellate court reversed the defendant's conviction, holding that the stop was pretextual because the officer was clearly looking for an excuse to investigate suspected drug-related activity. DeSantiago, 97 Wash.App. at 452-53, 983 P.2d 1173.
¶ 16 Finally, in Myers, the defendant drove past an officer who recognized the defendant as having had a suspended license about one year before. The officer was in the area on business, not a routine patrol. The officer suspected that the defendant was driving with a suspended license and followed his vehicle. The officer ran a license check in the midst of following the defendant, but, the officer stopped the defendant before the results of the check returned. Myers, 117 Wash.App. at 95, 97, 69 P.3d 367. The court held that the stop was pretextual because the officer's real purpose in stopping the defendant was to investigate him for driving with a suspended license. Myers, 117 Wash.App. at 97, 69 P.3d 367.
¶ 17 Unlike in each of these cases, in which the officers suspected criminal activity and followed the vehicles looking for an opportunity to stop them for a traffic violation, the deputies here did not follow Gibson's vehicle waiting for him to commit a traffic violation. Ladson, 138 Wash.2d at 346, 979 P.2d 833; DeSantiago, 97 Wash.App. at 452-53, 983 P.2d 1173; Myers, 117 Wash.App. at 97, 69 P.3d 367. Instead, the deputies were leaving a residence after unsuccessfully attempting to serve an arrest warrant on another named individual when Deputy England observed a driver, later identified as Gibson, turn without signaling. Further, Deputy England routinely patrols the area in which he stopped Gibson and he regularly writes infractions for failing to signal turns. These findings are unchallenged and are verities on appeal. Ross, 106 Wash.App. at 880, 26 P.3d 298. Therefore, unlike Ladson, DeSantiago, and Myers, Deputy England did not state, nor can it be inferred, that he intended to use a traffic violation as an excuse to investigate suspected criminal activity.
¶ 18 Moreover, the trial court considered all the testimony and found that the deputies' testimonies were more credible than Gibson's testimony. Gibson challenges one finding of fact, to which the deputies' testimonies amounted to substantial evidence to support the trial court's findings that the deputies stopped Gibson for a traffic violation, not to identify him for purposes of conducting a warrant check. Hoang, 101 Wash.App. at 742, 6 P.3d 602; see also Ross, 106 Wash. App. at 880, 26 P.3d 298. Thus, the trial court properly denied the suppression motion on the basis that the stop was not pretextual. Hoang, 101 Wash.App. at 743, 6 P.3d 602.

II. Fourth Amendment Search of Vehicle[7]
¶ 19 Next, Gibson challenges the trial court's suppression ruling. He asserts that *969 under Arizona v. Gant, 129 S.Ct. 1710,[8] the search of his vehicle was unlawful and the evidence discovered during that search must be suppressed. We decline to review the case under Gant because the contents in Gibson's vehicle were in open view and because exigent circumstances justified the deputies' warrantless search.
¶ 20 As a general rule, a warrantless search is per se unreasonable, in violation of the Fourth Amendment to the United States Constitution, unless it falls within one or more of a few "jealously and carefully drawn" exceptions to the warrant requirement. State v. Garvin, 166 Wash.2d 242, 249, 207 P.3d 1266 (2009) (quoting State v. Duncan, 146 Wash.2d 166, 171, 43 P.3d 513 (2002)); State v. Johnson, 128 Wash.2d 431, 446-47, 909 P.2d 293 (1996). Two such exceptions are the "plain view" doctrine and "open view" doctrine. State v. Seagull, 95 Wash.2d 898, 632 P.2d 44 (1981).
¶ 21 The "plain view" doctrine applies after an officer intrudes into an area where a reasonable expectation of privacy exists. Seagull, 95 Wash.2d at 901, 632 P.2d 44. The officer may seize evidence without a warrant if he has made a justifiable intrusion and inadvertently sights contraband in plain view. Seagull, 95 Wash.2d at 901-02, 632 P.2d 44. Therefore, the "plain view" doctrine does not justify the initial intrusion into the protected area. State v. Kennedy, 107 Wash.2d 1, 9, 726 P.2d 445 (1986) (citing Seagull, 95 Wash.2d 898, 632 P.2d 44). Instead, the "plain view" doctrine justifies a seizure only when the officer has lawful "access" to the seized contraband under some prior Fourth Amendment justification and when the officer has probable cause to suspect that the item is connected with criminal activity. Illinois v. Andreas, 463 U.S. 765, 771, 103 S.Ct. 3319, 77 L.Ed.2d 1003 (1983); Wayne R. LaFave, Jerold H. Israel, Nancy J. King, Criminal Procedure, § 3.2(b) at 55 (2d Ed. 1999); see e.g., Kennedy, 107 Wash.2d at 13, 726 P.2d 445 (holding that a prior justification to look under driver's seat for weapons implicated the "plain view" doctrine); State v. O'Neill, 148 Wash.2d 564, 62 P.3d 489 (2003) (officer justified under the "plain view" doctrine in seizing drug paraphernalia that he saw in plain view on vehicle floorboard while searching defendant's person for identification).
¶ 22 In contrast, the "open view" doctrine applies when an officer observes an item of evidence from a nonconstitutionally protected area. Kennedy, 107 Wash.2d at 10, 726 P.2d 445 (citing Seagull, 95 Wash.2d 898, 632 P.2d 44). A person has a diminished expectation of privacy in the visible contents of an automobile parked in a public place. State v. Young, 28 Wash.App. 412, 416, 624 P.2d 725 (citing United States v. Chadwick, 433 U.S. 1, 12-13, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977)), review denied, 95 Wash.2d 1024 (1981). Thus, "if an officer, after making a lawful stop, looks into a car from the outside and sees a weapon or contraband in the car, he has not searched the car." Kennedy, 107 Wash.2d at 10, 726 P.2d 445; e.g., Young, 28 Wash.App. 412, 624 P.2d 725. This is true even if the officer uses a flashlight to view the interior. State v. Rose, 128 Wash.2d 388, 399, 909 P.2d 280 (1996).
¶ 23 For example, in Young, an officer on routine patrol around 2:00 am noticed a vehicle parked at a shopping center away from other vehicles and businesses that were open. Young, 28 Wash.App. at 413-14, 624 P.2d 725. Moments later, the officer responded to a burglary at a nearby supermarket. Young, 28 Wash.App. at 414, 624 P.2d 725. After securing the building, the officer returned to the lone vehicle and noticed that the driver's door was slightly propped open. Young, 28 Wash.App. at 414, 624 P.2d 725. Using his flashlight, the officer observed a screwdriver and a wrench on the front seat, torn pieces of telephone yellow pages on the floorboard, and a claw hammer on the rear floorboard. Young, 28 Wash.App. at 414, 624 P.2d 725. *970 With the suspect still at large, the officer seized the hammer and the yellow pages. Young, 28 Wash.App. at 414, 624 P.2d 725. We held that the seizure was reasonable under the Fourth Amendment because the defendant had minimal privacy of vehicle contents in open view and because the officer was faced with exigent circumstances of potential evidence on hand that could help identify a suspect at large. Young, 28 Wash.App. at 419, 624 P.2d 725.
¶ 24 Here, Deputy Tjossem, while walking around Gibson's vehicle, looked inside and immediately saw a bottle of "Drano," a bottle of "Drain Out," and a bag of ammonia sulfate. Because Deputy Tjossem was outside Gibson's vehicle, which was parked in public, the "open view" doctrine applies, and merely looking through the vehicle's windows at the drain cleaners and bag of ammonia sulfate did not constitute a search. Like in Young, we hold that Gibson had a diminished expectation of privacy of the observable contents of his vehicle.
¶ 25 But to justify the warrantless seizure, the deputies must have had probable cause to believe that the contents of Gibson's vehicle were evidence of a crime and must have been faced with "emergent or exigent circumstances regarding the security and acquisition of incriminating evidence" that made it impracticable to obtain a warrant. State v. Smith, 88 Wash.2d 127, 137-38, 559 P.2d 970 (1977).
¶ 26 Here, Deputy Tjossem's training and experience reasonably led him to identify the drain cleaners and ammonium sulfate[9] as ingredients commonly used to manufacture methamphetamine. Deputy Tjossem was a narcotics investigator for the special investigations unit, was trained in identifying various narcotic-related crimes, and was a certified member of the Pierce County's clandestine lab team. To become certified with the clandestine lab team, Deputy Tjossem had to undergo a 40-hour course that, among other things, involved coursework on methamphetamine manufacturing. Indeed, Deputy Tjossem's testimony demonstrated his firm grasp on the complexities of manufacturing methamphetamine. Based on his training and experience, Deputy Tjossem recognized drain cleaners and ammonium sulfate to be ingredients typically used in manufacturing methamphetamines; therefore, he had probable cause to believe that they were evidence of a crime. State v. Cottrell, 86 Wash.2d 130, 542 P.2d 771 (1975) (must consider officer's special expertise in identifying criminal behavior sufficient to support probable cause); State v. Forrester, 135 Wash.App. 195, 143 P.3d 880 (2006) (possessing lab equipment and partially processed methamphetamine is sufficient evidence to support convictions for manufacturing methamphetamine).
¶ 27 Here, the determinative question is whether there were sufficient exigent circumstances to justify the seizure without a warrant. Although no precise guidelines exist as to what constitutes exigent circumstances, courts have upheld warrantless seizures from vehicles under more broadly defined exigent circumstances than those permitted for buildings. Young, 28 Wash.App. at 419, 624 P.2d 725 (citing 2 W. LaFave, Search and Seizure § 7.5, at 592 (1978)); see State v. Patterson, 112 Wash.2d 731, 774 P.2d 10 (1989). "Washington courts have long held that `danger to [the] arresting officer or to the public' can constitute an exigent circumstance." State v. Smith, 165 Wash.2d 511, 517, 199 P.3d 386 (2009) (quoting State v. Counts, 99 Wash.2d 54, 60, 659 P.2d 1087 (1983)); State v. Bakke, 44 Wash.App. 830, 834, 723 P.2d 534 (1986) ("The need to protect or preserve life, avoid serious injury, or protect property in danger of damage justifies an entry that would otherwise be illegal absent an exigency or emergency"), review *971 denied, 107 Wash.2d 1033 (1987). We look at the totality of the circumstances to determine whether exigent circumstances exist. Smith, 165 Wash.2d at 518, 199 P.3d 386.
¶ 28 Here, Deputy Tjossem, based on his training and experience, understood the dangers of chemicals used to manufacture methamphetamine. In particular, he knew that moving them around without proper safety equipment posed health risks to him and other officers. Without further searching Gibson's vehicle, Deputy Tjossem could not have ensured that it did not contain open containers of chemicals that would spill and become hazardous to either the tow truck operator or the officers who subsequently searched the vehicle. Further, leaving such chemicals in Gibson's vehicle, which was parked in a public area, also posed a potential threat to passersby. Accordingly, once Deputy Tjossem confirmed his suspicions that the chemicals he saw were used to manufacture methamphetamines, he entered Gibson's vehicle only to ensure that they were secure. After determining that the chemicals were secure, Deputy Tjossem left them in place. Although exigent circumstances permitted Deputy Tjossem to seize and remove the offending chemicals at the scene, Deputy Tjossem chose not to remove the chemicals for safety reasons, and Gibson's vehicle was towed to a secure impoundment lot where Deputy Fry obtained a warrant to search and seize the chemicals.
¶ 29 Combining the minimal expectation of privacy that Gibson had in the contents of his vehicle displayed in open view with the exigencies of safety to officers and to the public, we hold that the search was reasonable under the Fourth Amendment. Even though the trial court held that the search was valid under the doctrine of search "incident to arrest" that Gant now modifies, we can affirm the trial court on any ground. Nast v. Michels, 107 Wash.2d 300, 308, 730 P.2d 54 (1986) ("[A]n appellate court may sustain a trial court on any correct ground, even though that ground was not considered by the trial court"). Thus, we hold that the deputies' initial search of Gibson's vehicle was reasonable under the "open view" exception and exigent circumstances. We also hold that the deputies' observing chemicals used to make methamphetamine during the initial search was sufficient probable cause for the subsequent search warrant.
¶ 30 A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder shall be filed for public record pursuant to RCW 2.06.040, it is so ordered.
WE CONCUR: HUNT and QUINN-BRINTNALL, JJ.
NOTES
[1] Pierce County Sheriff's Department policy does not prohibit deputies from arresting individuals on warrants, contacting the Auburn Police Department, and transferring custody of the individual after confirming the warrant. Deputies may transfer individuals directly to the Auburn jail depending on call volume.
[2] Gibson conceded before the trial court that the warrant was for third degree theft.
[3] Gibson testified that he locked his vehicle upon exiting and that the officers "proceeded to walk around my vehicle" before opening the wing window and starting the search. II Verbatim Report of Proceedings (VRP) (Jan. 18, 2008) at 56.
[4] Gibson testified that his Suburban had "windows going [all] around." II VRP (Jan. 18, 2008) at 56, 61.
[5] Specifically, Deputy Tjossem testified that after Gibson was under arrest, "I went up and looked inside his [S]uburban and immediately saw several items that caught my attention, the first being a bag of ammonium sulfate. There was a can of Drano and a second can of . . . [Drain Out] . . . I could see those three items just by looking through the window, then I began to search the vehicle incident to Mr. Gibson's arrest." VRP (April 3, 2008) at 38-40; Ex. 8.
[6] Pretext is a "false reason used to disguise a real motive." Ladson, 138 Wash.2d at 359 n. 11, 979 P.2d 833 (internal quotations and citations omitted).
[7] Gibson does not challenge the search under the Washington Constitution.
[8] In Gant, the United States Supreme Court held that law enforcement officers may search a vehicle incident to arrest only if it is reasonable to believe that the arrestee could access the vehicle at the time of the search or that the vehicle contains evidence relevant to the arrest offense. Gant, 129 S.Ct. at 1719. Absent these justifications, "a search of an arrestee's vehicle will be unreasonable unless police obtain a warrant or show that another exception to the warrant requirement applies." Gant, 129 S.Ct. at 1723-24 (emphasis added).
[9] Hazardous chemicals used or intended to be used in the manufacture of controlled substances are subject to seizure and forfeiture and no property right exists in them. RCW 69.50.505. Hazardous chemicals are defined as "the controlled substance or substances being manufactured, as defined in RCW 69.50.101." RCW 64.44.010(4)(c). "Immediate precursors" to a "controlled substance," as defined in RCW 69.50.101(n)(2), are substances that are "an immediate chemical intermediary used or likely to be used in the manufacture of a controlled substance."