354

[No. 39573-8-II.   Division Two.   August 30, 2011.]

THE STATE OF WASHINGTON, *Respondent*, v. ANTHONY DEWAYNE JONES, *Appellant*.

*Kathryn A. Russell Selk* (of *Russell Selk Law Office*), for appellant.

*Mark E. Lindquist, Prosecuting Attorney*, and *Kimberley Ann DeMarco, Deputy*, for respondent.

¶1 PENOYAR, C.J. — Anthony Dewayne Jones appeals his convictions of unlawful possession of cocaine with intent to deliver within 1,000 feet of a school bus route stop, unlawful possession of oxycodone, and unlawful possession of methadone. Jones argues that the arresting officer conducted an unlawful, warrantless search of his vehicle. He also asserts that the prosecutor committed misconduct and that he received ineffective assistance of counsel. Finally, he raises several arguments in his statement of additional grounds.[1] We affirm Jones's conviction of unlawful possession of cocaine with intent to deliver within 1,000 feet of a school bus route stop, but we reverse his convictions of unlawful possession of oxycodone and unlawful possession of methadone.

## FACTS

¶2 On the afternoon of November 21, 2007, Tacoma Police Officer Kenneth Smith, who was on duty with Officer Henry Betts, noticed a man driving a Dodge Charger without wearing a seat belt. Smith initiated a traffic stop.

---

[1] RAP 10.10.

¶3 The Dodge Charger's driver, Jones, pulled his vehicle into a 7-Eleven parking lot, parked the car, and opened the driver's side door. Smith informed Jones that he had been stopped for failing to wear his seat belt and requested Jones's driver's license, registration, and proof of insurance. Smith cited Jones with an infraction for failure to wear a seat belt.

¶4 When Smith first approached Jones's vehicle, he noticed a compartment in the driver's side door containing white pills and two unlabeled pill bottles. The pills had spilled out of one of the bottles, and Smith noted an imprint of the number 512 on one of the white pills. Smith recognized the pill as oxycodone.

¶5 Smith asked Jones who owned the pills, and Jones responded that they belonged to his wife. Smith asked Jones if the pill bottle was labeled, and Jones responded that it was not. Smith asked Jones what the pills were, and Jones told Smith that the pills were Percocet.[2] Smith advised Jones he was under arrest, placed him in handcuffs, and read him his *Miranda*[3] warnings. Next, Smith asked Jones if he understood those rights and, having those rights in mind, whether he wished to speak with the officers. Jones responded "yes" to both questions. Report of Proceedings (RP) at 116-17. Jones then told Smith that he did not know it was a crime to have Percocet.

¶6 Smith then searched Jones. As he reached into Jones's left front pant pocket, Jones said, "This is not good; I am f[***]ed." RP at 119. Concerned for his safety, Smith asked Jones what was in his pocket. Jones replied, "I got some stuff that I should not be having." RP at 120. Smith then opened Jones's pocket and observed a plastic "baggie" containing 19 individually packaged blue baggies. Each baggie contained a white chalky substance. Smith asked

---

[2] Percocet contains oxycodone and acetaminophen. PHYSICIAN'S DESK REFERENCE 1125 (62d ed. 2008).

[3] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

Jones if the substance, which he suspected to be crack cocaine, was fake, and Jones replied, "No, that's some coke." RP at 122. At trial, Smith testified that in his experience, the amount of cocaine, a total of 21 grams, and the packaging were consistent with an intent to sell the drugs. When Smith asked Jones what he intended to do with the drugs, Jones responded that he had intended to sell the pills and the crack cocaine.

¶7 After placing Jones in the back of his patrol car, Smith searched Jones's vehicle. Smith found two pill bottles, which contained pills, in the driver's side door console. The large pill bottle contained what appeared to be oxycodone and methadone pills. The smaller bottle contained what appeared to be methadone pills. Forensics later confirmed that the substances found in Jones's vehicle and on his person were cocaine, oxycodone, and methadone.

¶8 Jones asked to speak with another officer, who he apparently felt could help him get out of trouble. Smith contacted a special agent with the violent crimes task force. The special agent arrived at the scene and interviewed Jones.

¶9 On January 25, 2008, the State charged Jones with unlawful possession of cocaine with intent to deliver,[4] unlawful possession of oxycodone,[5] and unlawful possession of methadone.[6] On July 6, 2009, the State filed an amended information, adding a school zone enhancement[7] to Jones's unlawful possession of cocaine with intent to deliver charge.

¶10 Before trial, Jones moved to suppress evidence seized from his vehicle, arguing that he was unreasonably detained and that the traffic stop was pretext for an unrelated criminal investigation. He also moved to sup-

---

[4] RCW 69.50.401(1), (2)(a).

[5] RCW 69.50.4013(1).

[6] RCW 69.50.4013(1).

[7] RCW 9.94A.533(6); RCW 69.50.435.

press his statements to the police, asserting that they were made in violation of his Fifth Amendment right to silence. The trial court denied his motions. At trial, Jones testified that he had purchased the prepackaged cocaine. He denied telling Smith that he intended to sell the drugs. Betts testified that he was not involved in the conversation between Smith and Jones.

¶11 The jury found Jones guilty of all charges and found that he had possessed cocaine with intent to deliver within a school zone. Jones appeals.

## ANALYSIS

### Vehicle Search

¶12 Jones argues for the first time on appeal that Smith's warrantless search of his vehicle was unlawful under the state and federal constitutions.[8] The State argues that Jones failed to preserve this issue for appeal and that the evidence is admissible under the open view doctrine. We agree with Jones.

### A. Manifest Error

¶13 The State contends that the record "was insufficiently developed for this court to determine the extent of the search" and that Smith "found no evidence in defendant's car other than what was observed in open view. Without the admission of evidence acquired as the result of an illegal search, there is no prejudice and any error is not manifest." Resp't's Suppl. Br. at 5. In general, we do not consider an issue raised for the first time on appeal, unless it is a manifest error affecting a constitutional right. *See* RAP 2.5(a)(3); *State v. Kirkman*, 159 Wn.2d 918, 926, 155 P.3d 125 (2007). If the error is of constitutional magnitude, the defendant must show how the alleged error actually

---

[8] At trial, Jones did not contest the search of his vehicle. Jones did argue that he was illegally seized and arrested and that the traffic stop was a pretext for an unrelated criminal investigation.

prejudiced him in the context of trial. *State v. McFarland*, 127 Wn.2d 322, 333, 899 P.2d 1251 (1995). "If the facts necessary to adjudicate the claimed error are not in the record on appeal, no actual prejudice is shown and the error is not manifest." *McFarland*, 127 Wn.2d at 333.

¶14 The alleged error affects Jones's constitutional right to privacy under article I, section 7 of the Washington State Constitution. All the facts necessary to adjudicate the claimed error are in the record on appeal: Smith testified that he stopped Jones for failing to wear his seat belt, approached Jones's vehicle, saw white pills that he recognized to be oxycodone and two pill bottles in a compartment in the driver's side door, arrested Jones, placed Jones in the back of his patrol car, and then searched Jones's vehicle. Smith testified that he then located two pill bottles containing oxycodone and methadone pills. Smith did not observe the methadone until he searched Jones's vehicle. Prejudice exists because the pills and pill bottles seized from Jones's vehicle provided evidence to support Jones's charges and convictions. We must consider Jones's claim.[9]

## B. OPEN VIEW DOCTRINE

¶15 When a party claims state and federal constitutional violations, we look first at the state constitution.

---

[9] We note that the Supreme Court recently reviewed the validity of a search incident to arrest under RAP 2.5(a)(3), even though the defendant failed to move to suppress evidence obtained during the search. *State v. Kirwin*, 165 Wn.2d 818, 823-24, 203 P.3d 1044 (2009). *But see State v. Mierz*, 127 Wn.2d 460, 468, 901 P.2d 286 (1995) (holding that the defendant's failure to move to suppress evidence obtained during an allegedly unlawful search constituted a waiver of any error associated with the admission of the evidence).

We also note that we recently held in *State v. Lee*, 162 Wn. App. 852, 857, 259 P.3d 294 (2011), that the defendant's failure to move to suppress evidence seized from his vehicle constituted a waiver of the right to have it excluded. In *Lee*, the defendant did not move to suppress any of the physical evidence against him. 162 Wn. App. at 854. Jones, however, did move to suppress the evidence seized from his vehicle, arguing that he had been illegally seized and arrested and that the traffic stop was a pretext for an unrelated criminal investigation. Even though Jones moved to suppress the evidence on different grounds, his motions to suppress enabled him to sufficiently develop the record at his CrR 3.6 hearing. Thus, we may consider his claim.

*State v. Patton*, 167 Wn.2d 379, 385, 219 P.3d 651 (2009). "No person shall be disturbed in his private affairs, or his home invaded, without authority of law." WASH. CONST. art. I, § 7. Washington courts recognize a privacy interest in automobiles and the contents therein. *Patton*, 167 Wn.2d at 385. Under article I, section 7, "a warrantless search is per se unreasonable, unless it falls within one of the carefully drawn exceptions to the warrant requirement." *Patton*, 167 Wn.2d at 386.

██ ██ ¶16 The State argues that no search occurred because the pills were in open view. The State does not argue that any other exceptions to the warrant require-ment, such as the vehicle search incident to arrest or exigent circumstances exception, apply. The State is correct that one exception to the warrant requirement is the open view doctrine. *See State v. Gibson*, 152 Wn. App. 945, 954, 219 P.3d 964 (2009). The open view doctrine applies when an officer observes a piece of evidence from a nonconsti-tutionally protected area. *Gibson*, 152 Wn. App. at 955.

> [I]f an officer, after making a lawful stop, looks into a car from the outside and sees a weapon or contraband in the car, he has not searched the car. Because there has been no search, article [I], section 7 is not implicated. Once there is an intrusion into the constitutionally protected area, article [I], section 7 is implicated and the intrusion must be justified if it is made without a warrant.

*State v. Kennedy*, 107 Wn.2d 1, 10, 726 P.2d 445 (1986).

██ ¶17 The open view doctrine "does not[, however,] provide authority to enter constitutionally-protected areas to take the items without first obtaining a warrant." *State v. Posenjak*, 127 Wn. App. 41, 52-53, 111 P.3d 1206 (2005). In order to seize items in open view, the officer must have probable cause to believe the items were evidence of a crime and be faced with " 'emergent or exigent circumstances regarding the security and acquisition of incriminating evidence' " such that it is impracticable to obtain a warrant.

*Gibson*, 152 Wn. App. at 956 (quoting *State v. Smith*, 88 Wn.2d 127, 137-38, 559 P.2d 970 (1977)).

¶18 When Smith approached Jones's vehicle, he noticed a compartment in the driver's side door containing white pills and two pill bottles. Smith noted an imprint of the number 512 on one of the white pills and recognized the pill to be oxycodone. Under the open view doctrine, Smith's observation of the pills and pill bottles, from the nonconstitutionally protected area outside Jones's vehicle, was not a search implicating article I, section 7; however, the open view doctrine did not permit his warrantless entry into Jones's vehicle to seize the items.

¶19 In *Gibson*, two officers stopped the defendant's car after he failed to signal a turn. 152 Wn. App. at 948-49. One of the officers learned that the defendant had an outstanding arrest warrant, arrested the defendant, handcuffed him, and placed him in the back of his patrol car. *Gibson*, 152 Wn. App. at 949. The arresting officer then walked around the defendant's locked vehicle and noticed a bottle of Drano, a bottle of Drain Out, and a bag of ammonium sulfate. *Gibson*, 152 Wn. App. at 949. He recognized these items as chemicals commonly used to manufacture methamphetamine, reached through the window of the defendant's vehicle, unlocked the door, and entered to secure the items. *Gibson*, 152 Wn. App. at 949. The officer knew that moving these items could pose health risks to the officers, and he entered the defendant's vehicle to verify that the items were secure. *Gibson*, 152 Wn. App. at 950. Inside the vehicle, the officer found ammonium sulfate, drain cleaner, dry ice, toluene, coffee filters, a funnel, coffee filters with pseudoephedrine, a bag of pseudoephedrine, and a coffee grinder containing pseudoephedrine. *Gibson*, 152 Wn. App. at 950. After determining that the items were secure, he left the items in the vehicle, and another officer obtained a warrant to search and seize the evidence of methamphetamine manufacturing. *Gibson*, 152 Wn. App. at 950. On appeal, the defendant challenged the initial warrantless search of his vehicle. *Gibson*, 152 Wn. App. at 953-54.

¶20 The situation here parallels that in *Gibson*, where "to justify the warrantless seizure, the deputies must have had probable cause to believe that the contents of Gibson's vehicle were evidence of a crime and must have been faced with 'emergent or exigent circumstances regarding the security and acquisition of incriminating evidence' that made it impracticable to obtain a warrant." *Gibson*, 152 Wn. App. at 956 (quoting *Smith*, 88 Wn.2d at 137-38). As in *Gibson*, "the determinative question is whether there were sufficient exigent circumstances to justify the seizure without a warrant." 152 Wn. App. at 957. Here, unlike in *Gibson*, no such circumstances existed. At the time of the search, Jones had been arrested, handcuffed, searched, and secured in the patrol car. Another officer was at the scene, and Jones's vehicle was parked in a parking lot. There was nothing to prevent the officers from safely securing the scene and obtaining a warrant. Thus the evidence seized from the car must be suppressed.[10]

¶21 A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder shall be filed for public record in accordance with RCW 2.06.040, it is so ordered.

JOHANSON, J., concurs.

¶22 QUINN-BRINTNALL, J. (dissenting) — Because Anthony Dewayne Jones has failed to preserve his challenge to the

---

[10] *See State v. Swetz*, 160 Wn. App. 122, 134, 247 P.3d 802 (2011) (noting that the observation of an item in open view from a lawful vantage point is not a search, but the officer's right to seize the items, if they are in a constitutionally protected area, must be justified by a warrant or an exception to the warrant requirement), *petition for review filed*, No. 85717-2 (Wash. Mar. 11, 2011). *But see State v. Louthan*, 158 Wn. App. 732, 746, 242 P.3d 954 (2010) (noting that there was no illegal search or seizure when police searched Louthan's vehicle without a warrant and seized a bong in open view), *petition for review filed*, No. 85608-7 (Wash. Feb. 8, 2011); *State v. Barnes*, 158 Wn. App. 602, 613-14, 243 P.3d 165 (2010) (holding that the trial court erred in ordering suppression of relevant evidence that the defendant had in open view at the time of his arrest).

admissibility of physical evidence at trial, I respectfully dissent.

¶23 Generally, failure to move to suppress evidence constitutes a waiver of the right to exclude it as obtained in violation of the Fourth Amendment. *State v. Mierz*, 127 Wn.2d 460, 468, 901 P.2d 286 (1995); *State v. Tarica*, 59 Wn. App. 368, 372, 798 P.2d 296 (1990), *rev'd on other grounds by State v. McFarland*, 127 Wn.2d 322, 899 P.2d 1251 (1995). A trial court does not err in considering evidence that a defendant has not moved to suppress. *Mierz*, 127 Wn.2d at 468. RAP 2.5(a)(3) permits a defendant to raise a "manifest error affecting a constitutional right" for the first time on appeal. "The defendant must identify a constitutional error and show how, in the context of the trial, the alleged error actually affected the defendant's rights; it is this showing of actual prejudice that makes the error 'manifest', allowing appellate review." *McFarland*, 127 Wn.2d at 333 (citing *State v. Scott*, 110 Wn.2d 682, 688, 757 P.2d 492 (1988)). To demonstrate actual prejudice, Jones must plausibly show that the asserted error had practical and identifiable consequences in the trial of the case. *State v. O'Hara*, 167 Wn.2d 91, 108, 217 P.3d 756 (2009) (citing *State v. Kirkman*, 159 Wn.2d 918, 935, 155 P.3d 125 (2007)).

¶24 Although the issue of lawful search and seizure of physical evidence is constitutional in nature, review of Jones's challenge to the admissibility of the evidence is preserved for our review only if Jones made a timely objection or motion to strike or suppress the allegedly unlawfully seized evidence at trial. ER 103(a)(1); *State v. Harris*, 154 Wn. App. 87, 94, 224 P.3d 830 (2010). Jones's motion must have stated a specific ground of objection. ER 103(a)(1). "Even if an objection is made at trial, [Jones] may only assign error in the appellate court on the specific ground of the evidentiary objection made at trial." *DeHaven v. Gant*, 42 Wn. App. 666, 669, 713 P.2d 149 (citing *State v. Guloy*, 104 Wn.2d 412, 422, 705 P.2d 1182 (1985), *cert. denied*, 475 U.S. 1020 (1986); *State v. Boast*, 87 Wn.2d 447,

451, 553 P.2d 1322 (1976)), *review denied*, 105 Wn.2d 1015 (1986). We do not generalize specific objections such that the existence of a pretrial motion to suppress evidence seized preserves *any* claim of error with respect to that evidence. *DeHaven*, 42 Wn. App. at 670. And where the trial court has not been asked to rule on an issue, there is no ruling and thus no error appearing on the record affecting a constitutional right allowing us to address an untimely challenge to the admissibility of the unchallenged evidence. RAP 2.5(a)(3).

¶25 Here, Jones moved to suppress all statements made in alleged violation of his Fifth Amendment right to silence and all evidence obtained either as a result of his allegedly unlawful seizure or the allegedly pretextual traffic stop. He did not challenge the scope of the search incident to his arrest. *See State v. Louthan*, 158 Wn. App. 732, 745, 242 P.3d 954 (2010), *petition for review filed*, No. 85608-7 (Wash. Feb. 8, 2011). Because Jones failed to challenge the scope of the search of his vehicle, the State did not present alternative theories that may have justified the search and the trial court did not create a record sufficient for this court's review. RAP 2.5(a)(3); *Louthan*, 158 Wn. App. at 745.

¶26 On appeal, however, Jones argues for the first time that the warrantless search of his vehicle and subsequent seizure of evidence were unlawful under the Washington and federal constitutions. Specifically, Jones challenges the seizures as unlawful because they failed to fall under either the open view or plain view exceptions to the exclusionary rule. But Jones did not move to suppress evidence seized in alleged violation of either article I, section 7 of the Washington Constitution or the Fourth Amendment and he may not argue any claim on this ground on appeal. RAP 2.5(a); *DeHaven*, 42 Wn. App. at 670.

¶27 Moreover, Jones's claim on appeal fails under our Supreme Court's recently articulated test for when a defendant may challenge for the first time the admissibility of evidence obtained during a warrantless search of an auto-

mobile incident to his arrest. *State v. Robinson*, 171 Wn.2d 292, 305, 253 P.3d 84 (2011). In *Robinson*, our Supreme Court held that the principles of issue preservation would not apply if the following four conditions are met: "(1) a court issues a new controlling constitutional interpretation material to the defendant's case, (2) that interpretation overrules an existing controlling interpretation, (3) the new interpretation applies retroactively to the defendant, and (4) the defendant's trial was completed prior to a new interpretation." 171 Wn.2d at 305. No Washington court has recently issued a "new controlling constitutional interpretation" of either the open view or plain view exceptions to the exclusionary rule, and Jones cannot satisfy the first factor of the *Robinson* test. 171 Wn.2d at 305; *see also Davis v. United States*, ___ U.S. ___, 131 S. Ct. 2419, 2434, 180 L. Ed. 2d 285 (2011) (courts do not apply the exclusionary rule to evidence properly seized under the law at the time the search is conducted).

¶28 Accordingly, because Jones failed to challenge the admissibility of the evidence resulting from Officer Kenneth Smith's warrantless seizure on either Fourth Amendment or article I, section 7 grounds at trial and because neither the open view doctrine nor the plain view doctrine was recently the subject of "a new controlling constitutional interpretation," I would hold that Jones has failed to preserve this issue for appellate review and affirm. RAP 2.5(a); *Robinson*, 171 Wn.2d at 305; *Mierz*, 127 Wn.2d at 468.

¶29 Alternatively, when Officer Smith approached Jones's vehicle, he saw what he immediately recognized as evidence of the crime of unlawful possession of a controlled substance then being conducted in his presence: oxycodone pills spilling out of an unlabeled pill bottle in the car door. The record does not support Jones's belated claim that the seizure of the contraband violated his state or federal constitutional rights, and I would affirm.