# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 72034-1-I |
| Respondent, | ) | |
| | ) | DIVISION ONE |
| v. | ) | |
| | ) | UNPUBLISHED OPINION |
| FRANK EARL YOUELL, | ) | |
| | ) | |
| Appellant. | ) | FILED: July 28, 2014 |
| | ) | |

APPELWICK, J. — Youell appeals his conviction for unlawful possession of a firearm. He argues that the firearm was discovered pursuant to an unlawful seizure and should have been excluded. He also contends that the trial court erred when it found that he had the ability to pay legal financial obligations without inquiring into his individual circumstances. We affirm.

## FACTS

On June 14, 2012, Tacoma police officers Zachery Wolfe and Tyler Meeds responded to a 911 call about an armed robbery at East 56th Street and McKinley Avenue. The caller said the perpetrator was a light-skinned African-American or Native American male in a black puffy coat and gray pants. When the officers arrived on scene, they were unable to locate the caller or a possible suspect.

The officers encountered Frank Youell walking at East 52nd Street and McKinley Avenue. It was around 12:42 a.m. Youell wore a black puffy coat and blue jeans and appeared to be of Native American descent. The officers drove up behind Youell and illuminated him with their spotlight. They then exited the car and approached Youell on foot.

The officers asked Youell what he was doing in the area. Youell responded that he was walking to the corner store at 56th and McKinley, that the store was closed, and that he was going to the 24 hour 7-Eleven on 40th and McKinley. The officers asked for Youell's identification, which Youell voluntarily provided. Officer Wolfe wrote down Youell's information in his notebook while Officer Meeds continued to speak with Youell. Officer Wolfe did not immediately return Youell's identification.

Officer Meeds asked Youell if he had any weapons and Youell responded that he did not. Officer Meeds also asked if Youell would consent to a frisk of his person, to which Youell said, "[S]ure." Youell then looked around, started to cry, and whispered, "[O]h my [G]od, oh my [G]od." This led the officers to suspect that Youell had a weapon, so they handcuffed Youell. Officer Meeds found a .38 caliber handgun in Youell's waistband. A records check showed that Youell was a convicted felon.

The State charged Youell with unlawful possession of a firearm in the first degree. Youell moved to suppress the firearm, arguing that the frisk and subsequent search were unlawful. The trial court denied his motion and found him guilty as charged.[1]

Youell appeals.

## DISCUSSION

### I. Unlawful Seizure

Youell argues that the trial court erred in denying his motion to suppress. He contends that the officers seized him without reasonable suspicion that he committed a crime. Therefore, he asserts, the firearm they discovered was the fruit of an unlawful

---

[1] Youell waived his right to a jury trial.

search and should have been excluded. He assigns error to several related findings of fact and conclusions of law.

When reviewing the trial court's denial of a motion to suppress, we ask whether substantial evidence supports the challenged findings of facts and whether the findings support the trial court's conclusions of law. State v. Gibson, 152 Wn. App. 945, 951, 219 P.3d 964 (2009). Substantial evidence is evidence sufficient to persuade a rational, fair-minded person of the finding's truth. State v. Hill, 123 Wn.2d 641, 644, 870 P.2d 313 (1994). We do not assess witness credibility on appeal and instead defer to the trial court on those determinations. State v. Liden, 138 Wn. App. 110, 117, 156 P.3d 259 (2007). Unchallenged findings of fact become verities on appeal. Gibson, 152 Wn. App. at 951. We review conclusions of law de novo. State v. Hinton, 179 Wn.2d 862, 867, 319 P.3d 9 (2014).

A. Challenged Findings of Fact

Youell first assigns error to the trial court's finding that "foot traffic in this area at that time of night was minimal to nonexistent." Youell accurately notes that Officer Wolfe described foot traffic under those circumstances as "unusual"—not "minimal to nonexistent." But, while the trial court took liberties with its phrasing, the salient point here is that it would be uncommon to encounter a pedestrian in this residential area at 12:42 a.m. Because Officer Wolfe's testimony was the only evidence the court considered on this issue, we read the finding of fact to be consistent with his testimony.

Youell next challenges the finding that Youell "appeared to substantially match the suspect description." The 911 caller identified four characteristics about the robber: he

3

was male, either a light-skinned African-American or Native American, wore a black puffy coat, and wore gray pants. It is undisputed that Youell matched the first three characteristics. The only difference was that Youell's pants were blue, not gray. Though Youell was not an exact match, this was sufficient evidence that he substantially matched the suspect description.

Youell further challenges the finding that he told officers that he was "coming from a store at East 56th Street and McKinley Avenue (the location of the reported robbery)." (Emphasis added.) Youell argues that the testimony actually shows that he said he was walking to the store. Youell is correct that, according to Officer Wolfe's testimony, Youell "said that he is walking to the corner store at 56th and McKinley." However, Officer Wolfe continued that "[Youell] said that they were closed and that he was going to walk over to 40th and McKinley where there was a 7/11 that's open for 24 hours." When the officers encountered Youell, he was at 52nd and McKinley. The finding of fact is supported by the testimony.

Finally, Youell contests the finding that he said he was "just" coming from the location of the robbery. Youell points out that his statement to Officer Wolfe did not include a timeframe. However, the evidence supports the court's finding that Youell indicated he had just come from the location of the robbery. When the officers saw Youell, he was walking down the street four blocks away from the robbery location. The officers asked him what he was doing in the area. His response was that he was at 56th and McKinley and was now headed somewhere else. In other words, Youell was in motion, a short distance from the location of the robbery, and, when asked what he was presently

doing, said he was coming from that location. A rational, fair-minded person could be persuaded of the truth of the court's finding that Youell indicated to the officers that he "just" came from there.

There is substantial evidence to support the trial court's findings of fact.

B. Challenged Conclusions of Law

Youell assigns error to the trial court's conclusion that "the officers did not seize the defendant until they placed him in handcuffs. Prior to that, the officers had engaged the defendant in a voluntary and consensual social contract." Youell maintains that he was seized either when the officers asked him what he was doing or when they asked to frisk him.

A seizure occurs when, "'considering all the circumstances, an individual's freedom of movement is restrained and the individual would not believe he or she is free to leave or decline a request due to an officer's use of force or display of authority.'" State v. Harrington, 167 Wn.2d 656, 663, 222 P.3d 92 (2009) (quoting State v. Rankin, 151 Wn.2d 689, 695, 92 P.3d 202 (2004)). This is an objective standard that looks to the law enforcement officer's actions and asks whether a reasonable person in the individual's position would feel he or she was being detained. Id. If a reasonable person under the circumstances would not feel free to walk away, the encounter is not consensual. Id. at 663-64.

Youell asserts that, when the officers approached him, a combination of circumstances constituted a display of authority sufficient to constitute a seizure. Those circumstances are as follows: the officers used a spotlight to illuminate Youell; the officers

approached Youell in a vehicle while he was on foot; the officers were in uniform and drove a marked patrol car; and the officers asked Youell what he was doing.

Shining a spotlight on a defendant does not alone constitute a seizure. State v. Young, 135 Wn.2d 498, 514, 957 P.2d 681 (1998). In Young, the officer encountered the defendant around 9:40 p.m. in an area with a high level of narcotic activity. Id. at 501-02. After Deputy Sheriff Robert Carpenter observed Young acting suspiciously, he drove toward Young at a normal speed. See id. at 502. Young began to walk quickly toward some bushes. Id. at 503. Deputy Carpenter sped up and shone his spotlight on Young. Id. Deputy Carpenter saw Young toss a small object near a tree and quickly move away. Id. Deputy Carpenter exited his car and told Young to stop. Id. Deputy Carpenter retrieved the object, which appeared to contain crack cocaine. Id. He then arrested Young. Id.

The Washington Supreme Court found that Young was not seized when Deputy Carpenter illuminated him with the spotlight. See id. at 514. The court reasoned that shining a spotlight did not constitute a show of authority such that a reasonable person would not have felt free to leave. Id. at 513-14. The court held that "[m]ere illumination alone, without additional indicia of authority, does not violate the Washington Constitution." Id. at 514.

In United States v. Mendenhall, 446 U.S. 544, 554-55, 100 S. Ct. 1870, 64 L. Ed. 2d 497 (1980), the U.S. Supreme Court provided examples of additional indicia that may amount to a seizure. These included: the threatening presence of several officers; the display of a weapon by an officer; physical touching of the citizen's person; and the use

of language or tone of voice indicating that compliance with the officer's request might be compelled. Id. The Young court noted that such indicia of authority were absent in the case before it:

> [Officer Carpenter's actions did not] rise to the level of intrusiveness discussed in Mendenhall. Carpenter did not have his siren or emergency lights on. No weapon was drawn. The police car did not come screeching to a halt near Young. Young was on a public street in public view. The shining of the light on him revealed only what was already in plain view.

135 Wn.2d at 512-13.

Here, the examples from Mendenhall are likewise absent. Instead, Youell offers the following facts as indicia of authority: the officers asked Youell what he was doing; the officers were in uniforms and a marked police vehicle; and the officers approached in a car while Youell was on foot. However, none of these actions constitute a display of authority.

In State v. Armenta, the court recognized that not every encounter between an officer and a citizen constitutes a seizure. 134 Wn.2d 1, 10, 948 P.2d 1280 (1997). An officer may engage a person in conversation in a public place and ask for identification without seizing that person. Id. at 11. The officer's questions need not be purely conversational. For example, in State v. Thorn, the court found that the defendant was not seized when an officer approached the defendant in a parking lot and asked, "Where is the pipe?" 129 Wn.2d 347, 349, 354, 917 P.2d 108 (1996), overruled on other grounds by State v. O'Neill, 148 Wn.2d 564, 62 P.3d 489 (2003). Here, the officers did not make a display of authority by approaching Youell on a public street and asking him what he was doing.

Nor did the officers' actions constitute a seizure by virtue of their uniforms and marked patrol car. As the Mendenhall court recognized, characterizing all street encounters between citizens and the police as seizures would be "wholly unrealistic." 446 U.S. at 554. To find that the officers displayed authority merely by displaying the insignia of their profession would elevate virtually all police interactions to seizures. This would likewise be unrealistic.

It would be similarly impractical to find that an officer displays authority to a pedestrian simply by approaching in a vehicle. In Young, the officer was in his patrol car when he approached the defendant, who was on foot. 135 Wn.2d at 503. The court noted that the officer did not have his siren or lights on, nor did he come to a screeching halt. Id. at 513. By contrast, in State v. Gantt, the court found that the defendant was seized when the officer activated his emergency lights before asking the defendant what he was doing. 163 Wn. App. 133, 141, 257 P.3d 682 (2011), review denied, 173 Wn.2d 1011, 268 P.3d 943 (2012). The lights were the crucial display of authority. Id.; see also State v. DeArman, 54 Wn. App. 621, 624, 774 P.2d 1247 (1989). Here, the officers did not flash their lights, activate their siren, or screech to a halt. They merely drove up to where Youell was walking and exited their vehicle.

Young is instructive here. Youell was not seized when the officers approached him, shone a light on him, and asked what he was doing.

Instead, the encounter was initially a social contact. This contact included the officers' request for Youell's identification. See Armenta, 134 Wn.2d at 11 ("[A]sking for officers' identification does not, alone, raise the encounter to an investigative detention.").

8

Officer Wolfe decided not to immediately return Youell's identification in light of the reported robbery. But, he did not run a weapons check or otherwise use the identification to investigate Youell. Compare State v. Crane, 105 Wn. App. 301, 310, 19 P.3d 1100 (2001), overruled on other grounds by State v. O'Neill, 148 Wn.2d 564, 62 P.3d 489 (2003). He simply held the identification while he and his partner spoke with Youell.

Youell argues that the subsequent request to frisk, coupled with Officer Wolfe's retention of Youell's identification, constituted an intrusion substantial enough to seize him. He notes that "'[r]equesting to frisk is inconsistent with a mere social contact.'" (Quoting Harrington, 167 Wn.2d at 669.) In Harrington, an officer approached the defendant on the street and engaged him in conversation. Id. at 660-61. The officer noticed that Harrington was fidgety and kept putting his hands into his pockets, which bulged. Id. at 661. The officer asked Harrington to remove his hands from his pockets. Id. Another officer arrived. Id. The first officer then asked Harrington if he could frisk him. Id.

The Harrington court found that, while this encounter was initially a social contact, it subsequently rose to the level of a seizure. Id. at 662, 670. Together, the control of Harrington's behavior by asking him to remove his hands, the second officer's sudden arrival, and the request to frisk created a "progressive intrusion substantial enough to seize Harrington." See id. at 666, 667, 669-70.

Youell maintains that he was likewise seized when the officers asked to frisk him. He further challenges the trial court's conclusion that the officers had reasonable suspicion justifying his seizure and that the weapons frisk was lawful. But, in "certain

9

situations, a police officer may briefly frisk a person to search for weapons that might pose a risk to officer and bystander safety. When justified, these protective frisks do not violate the constitutional prohibition against unreasonable invasions of individual privacy." State v. Russell, No. 89253-9, 2014 WL 3537955, at *1 (Wash. July 10, 2014). In Russell, the frisk was justified because the officer could point to specific and articulable facts that supported his belief that Russell might be armed and dangerous. Id. at *3. The officer recognized Russell from an encounter a week earlier, when Russell had lied about possessing a weapon. Id. During this particular encounter, it was late at night and the officer was alone. Id. The court found that these circumstances amounted to a reasonable safety concern. Id.

Here, the social contact ended and became an investigatory stop when Youell answered that he had come from the location of the recent armed robbery. That fact, and his similarities to the description of the suspect in that robbery, are specific and articulable facts that made it reasonable for the officers to be concerned about a possible weapon and to frisk Youell. The request to frisk was a seizure under Harrington. But, the officers' request to frisk Youell was justified by safety concerns. So, even though Youell was seized when the officers asked to frisk him—rather than moments later when he was handcuffed, as the trial court concluded—the seizure was not unlawful and would not provide a basis to exclude the weapon. The trial court did not err in denying Youell's motion to suppress.

II.    Legal Financial Obligations

RCW 10.01.160(3) requires that "[i]n determining the amount and method of payment of costs, the court shall take account of the financial resources of the defendant and the nature of the burden that payment of costs will impose." The trial court ordered Youell to pay $1,300 in legal financial obligations (LFOs). The court also entered a boilerplate finding stating that:

> The court has considered the total amount owing, the defendant's past, present and future ability to pay legal financial obligations, including the defendant's financial resources and the likelihood that the defendant's status will change. The court finds that the defendant has the ability or likely future ability to pay the legal financial obligations imposed herein. RCW 9.94A.753.

Youell challenges this finding, alleging that the court did not actually consider his financial status.

Youell did not challenge the imposition of costs at trial. Issues not raised in the trial court generally may not be raised for the first time on appeal. RAP 2.5(a); State v. Ford, 137 Wn.2d 472, 477, 973 P.2d 452 (1999). Our case law has recognized an exception for challenges to illegal or erroneous sentences. Id.

Here, it is important to distinguish between mandatory and discretionary LFOs. Youell's LFOs consisted of $500 of crime victim assessments, $200 for the criminal filing fee, $100 for the DNA database fee, and $500 of court costs. Crime victim assessments, DNA fees, and criminal filing fees are mandatory LFOs and the court lacks discretion to consider a defendant's ability to pay when imposing them. State v. Lundy, 176 Wn. App. 96, 102, 308 P.3d 755 (2013). To the extent that the trial court imposed mandatory LFOs, Youell's sentence was not illegal or erroneous.

11

This leaves only the $500 in court costs. But, this item is discretionary. See State v. Curry, 118 Wn.2d 911, 916, 829 P.2d 166 (1992). A defendant's failure to object to a discretionary determination at sentencing waives the right to challenge that determination on appeal. State v. Calvin, 176 Wn. App. 1, 25, 316 P.3d 496, 507 (2013). Youell's failure to object at trial precludes him from challenging the imposition of court costs for the first time on appeal. We decline to review this assignment of error.

The trial court properly denied Youell's motion to suppress.

We affirm.

_Appelwick, J._

WE CONCUR:

_Dwyer, J._          _Schindler, J._